UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GARY W. WINTERS,<br><br>      Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF THE ARMY,<br><br>      Defendant. | Civil Action No. 25-1314 (LLA) |

**MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND
MEMORANDUM IN SUPPORT THEREOF**

**TABLE OF CONTENTS**

Background ............................................................................................................................ 2

    I.      Rule 12(b)(1) ........................................................................................................ 3

    II.     Rule 12(b)(6) ........................................................................................................ 5

Argument ............................................................................................................................. 7

    I.      Equitable Relief Is Limited Under 5 U.S.C. § 552a(g), Therefore Prayer (b) Fails as a Matter of Law ......................................................................................... 7

    II.     Plaintiff Fails to Establish the Army Willfully or Intentionally Disclosed Plaintiff's Photograph ....................................................................................... 9

    III.    The Complaint Does Not Establish a § 552a(b) Disclosure From a "System of Records" ............................................................................................................. 13

    IV.    The Complaint Does Not Establish a § 552a(b) Disclosure Caused "Actual Damages" ............................................................................................................ 13

Conclusion ....................................................................................................................... 18

**BACKGROUND**

The Complaint alleges as follows. Plaintiff, Gary W. Winters, is a former U.S. Army Soldier who attained the rank of Staff Sergeant and was discharged January 13, 2020. Compl. (ECF No. 2) ¶¶ 15–16. In August 2023, Plaintiff met civilian Morgan Pasewicz on a dating application; they began dating around Thanksgiving 2023, became estranged in February 2024, and later allegedly filed cross-petitions for domestic-violence protective orders in North Carolina. *Id.* ¶¶ 17, 19–21; Compl. Ex. 1 at 1–4.

On March 18, 2024, Ms. Pasewicz allegedly sent a military photo of Plaintiff to him, in order to accuse Plaintiff publicly of lying about Special Forces service and of "stolen valor." *Id.* ¶¶ 25–27, 31, 35. At the June 24, 2024 domestic-violence protective order hearing, Ms. Pasewicz testified that she possessed an "official photo" of Plaintiff. *Id.* ¶ 24; Compl. Ex. 1 at 28–29; Compl. Ex. 2.[1]

According to Ms. Pasewicz's testimony, the photograph reached her through a private, personal chain: Staff Sergeant Thomas E. "Tommy" Dines (Plaintiff's former unit member) allegedly provided this photo to Ms. Pasewicz's new boyfriend, Michael Chambers (a former Marine), who then relayed it to her. *Id.* ¶¶ 29, 32–33; Ex. 1 at 28–31. According to Plaintiff, the photograph bore the marking "FOR OFFICIAL USE ONLY," underscoring that the Army has clearly marked it was not for public dissemination. *Id.* ¶ 38; Ex. 2; Ex. 1 at 78.

Critically, Plaintiff's own submissions present contradictory sourcing for the photo: on the one hand, he alleges that the materials were from his Official Military Personnel File; on the other

---

[1] While Plaintiff alleges in his Complaint that she testified that she obtained this photograph and "other documents" from "his Official Military Personnel File," the hearing transcript provided by Plaintiff supports neither that Ms. Pasewicz obtained documents other than the photograph provided in Exhibit 2, nor that she obtained them from his Official Military Personnel File.

hand, he also offers testimony that the image was illicitly "pulled … from a PAO [Public Affairs Office] server," in other words, from a public affairs system rather than his personnel file. *Compare Id.* ¶¶ 24, 29, 52 (Official Military Personnel File) with Compl. Ex. 1 at 78 (Plaintiff testifying the image was taken from a "PAO server").

According to the transcript attached to the Complaint, Ms. Pasewicz testified that she and Mr. Chambers wanted to "call [Plaintiff] out" and "embarrass him"—taunting Plaintiff via text. *Id.* ¶¶ 27–28, 35; Ex. 1 at 25–26, 61; Ex. 3. She further testified Chambers acted out of "concern" for her—not at any Army request or direction—confirming the civilian, private impetus for the request to Dines. *Id.* ¶ 34; Compl. Ex. 1 at 60.

Plaintiff alleges the Army did not condone any disclosure and, when notified, allegedly disciplined the responsible Soldier.  Compl. ¶ 45.  Specifically, the Complaint alleges that, after Plaintiff complained to the Department of the Army Inspector General, the Army convened an administrative investigation into the disclosure of his records under Army Regulation 15-6, and the investigation substantiated the allegations, and Staff Sergeant Dines "was subsequently disciplined." *Id.* ¶¶ 43–46.

## I.        Rule 12(b)(1)

Rule 12(b)(1) tests a federal court's power to hear the case. "Federal courts are courts of limited jurisdiction"; they possess only the authority conferred by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The court must confirm subject-matter jurisdiction before proceeding to the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). The plaintiff bears the burden of establishing jurisdiction, and the court has an independent obligation to assure itself of jurisdiction at every stage. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

When the United States or one of its agencies is the defendant, Rule 12(b)(1) analysis typically begins (and often ends) with sovereign immunity. Sovereign immunity "shields the Federal Government and its agencies from suit" absent an unequivocally expressed statutory waiver; any waiver is strictly construed in the Government's favor. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Lane v. Peña*, 518 U.S. 187, 192 (1996). The terms of the waiver define the court's jurisdiction; if the complaint does not plausibly bring the case within the waiver's scope, dismissal under Rule 12(b)(1) is required. *See Lane*, 518 U.S. at 192; *Meyer*, 510 U.S. at 475.

The Privacy Act is such a limited waiver. Congress consented to damages actions only as authorized by 5 U.S.C. § 552a(g), and only to the extent specified in § 552a(g)(4), which requires proof of "actual damages" as a result of agency action that was "intentional or willful." The Supreme Court has held that § 552a(g)(4)'s damages clause is a narrow waiver. *FAA v. Cooper*, 566 U.S. 284, 290 (2012). In practice, courts in this District applying Rule 12(b)(1) in Privacy Act cases ask whether the complaint plausibly alleges facts bringing the claim inside the waiver; if not, dismissal follows. *See, e.g., Stewart v. Kendall*, 578 F. Supp. 3d 18, 23 (D.D.C. 2022) (treating § 552a(g)(4)'s damages requirement as a prerequisite to the waiver and dismissing for lack of jurisdiction where the pleading failed to meet the elements).

Because a Rule 12(b)(1) motion challenges the court's power to hear the case, the court does not confine itself to the four corners of the complaint. *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992); *Haase v. Sessions*, 835 F.2d 902, 906–07 (D.C. Cir. 1987). Additionally, the usual presumption of truth attaching to allegations at the 12(b)(6) stage does not fully apply to jurisdictional facts on a 12(b)(1) motion; "the plaintiff's factual allegations in the complaint will bear closer scrutiny" and may require competent proof. *See Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (ellipses omitted).

A Rule 12(b)(1) challenge may be "facial," arguing that the complaint's allegations—even if taken as true—do not state a basis for jurisdiction (e.g., alleging non-pecuniary injury under the Privacy Act); or "factual," disputing the truth of jurisdictional allegations with evidence (e.g., proof that alleged pecuniary losses are not attributable to the alleged disclosure). In a facial attack, the court applies a *Twombly*/*Iqbal*-like plausibility screen to the jurisdictional facts. In a factual attack, the court may consider extrinsic evidence and resolve conflicts to decide whether the plaintiff has actually carried the jurisdictional burden. *Herbert*, 974 F.2d at 197; *Haase*, 835 F.2d at 906–07.

When jurisdictional facts are intertwined with the merits, D.C. Circuit law still permits the court to consider evidence and resolve factual disputes so long as the decision truly goes to jurisdiction (e.g., whether the suit falls within an unequivocally expressed waiver), rather than pre-judging the merits under a different standard. *Herbert*, 974 F.2d at 197. In the sovereign-immunity context, that line typically favors Rule 12(b)(1) determination: the question is whether Congress has consented to suit on the pleaded facts, not whether the plaintiff can ultimately prove a statutory violation.

Thus, on a 12(b)(1) motion raising sovereign-immunity limits, the court asks whether the plaintiff has plausibly alleged—and, if contested, proved with competent evidence—facts bringing the suit within the precise terms of the waiver. With the Privacy Act, that means allegations satisfying § 552a(g)'s prerequisites and § 552a(g)(4)'s narrow damages clause as construed in *Cooper*. If the plaintiff's pleading (as illuminated or contradicted by extrinsic jurisdictional evidence) does not invoke the waiver, the court lacks subject-matter jurisdiction and must dismiss.

## II.    <u>Rule 12(b)(6)</u>

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint under Rule 8(a)(2). The pleading must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief," not merely "labels and conclusions" or "a formulaic recitation of the elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57, 570 (2007). To survive dismissal, the facts alleged must "state a claim to relief that is plausible on its face," permitting the court to draw a reasonable inference of liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Plausibility is a context-specific inquiry that draws on the court's judicial experience and common sense; it requires more than facts "merely consistent with" liability and less than probability. *Id*. at 678–79; *Twombly*, 550 U.S. at 557.

In applying this standard, the court accepts as true all well-pleaded factual allegations and draws reasonable inferences in the plaintiff's favor, but it does not accept legal conclusions couched as facts, threadbare recitals of elements, or naked assertions devoid of factual enhancement. *Iqbal*, 556 U.S. at 678–79; *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012). The complaint must include enough factual content to "nudge" the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Where the facts alleged are equally compatible with lawful conduct or reflect an "obvious alternative explanation," the allegations do not plausibly show entitlement to relief. *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567–68.

On a Rule 12(b)(6) motion, the court's review is generally limited to the four corners of the complaint, but it may consider materials that are part of or incorporated into the pleading without converting the motion to summary judgment. See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). That includes exhibits attached to the complaint, documents incorporated by reference or "integral" to the claims, and matters of which the court may take judicial notice (such as public records), considered for their existence, not for the truth of disputed matters. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133

(D.C. Cir. 2015); *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997). Where such a document conflicts with a bare allegation, the document controls and the contrary allegation is not assumed true. *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004); *Farah v. Esquire Mag.*, 736 F.3d 528, 534 (D.C. Cir. 2013).

The plausibility requirement applies to each essential element of the asserted cause of action. A complaint that fails to allege facts making any required element plausible is subject to dismissal. *See, e.g.*, *Iqbal*, 556 U.S. at 682 (rejecting conclusory allegations where factual content did not allow a reasonable inference of the requisite mental state); *Hettinga*, 677 F.3d at 476 (affirming dismissal where allegations were conclusory or implausible). Although affirmative defenses ordinarily are not resolved on a 12(b)(6) motion, dismissal is appropriate when the complaint's own allegations, together with properly considered materials, conclusively establish the defense (e.g., statute of limitations). *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (per curiam).

## ARGUMENT

**I.    Equitable Relief Is Limited Under 5 U.S.C. § 552a(g), Therefore Prayer (b) Fails as a Matter of Law**

As an initial matter, Plaintiff's Prayer (b) seeks a form of relief that the Privacy Act does not make available on the sole claim he has pleaded. He brings a disclosure damages claim under § 552a(g)(1)(D) yet asks the Court to "expunge" or "correct" "inaccurate and/or derogatory" material, and to award fees under provisions that apply to unpled causes of action. Injunctive relief directing an agency to amend or expunge records is available only in actions challenging a refusal to amend or to grant access under § 552a(g)(1)(A)–(B), and the statute channels those remedies exclusively through § 552a(g)(2)–(3). See 5 U.S.C. § 552a(g)(2)(A) (court "may order the agency to amend the individual's record"); *id.* § 552a(g)(3)(A) (court "may enjoin the agency from

withholding the records and order the production"). The D.C. Circuit has repeatedly held that equitable relief under the Privacy Act is limited to those enumerated contexts and is not available on a (g)(1)(D) disclosure claim. *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1121–23 (D.C. Cir. 2007) (construing the Act's remedial scheme narrowly and explaining that the court's powers track the particular subsection invoked); *Haase v. Sessions*, 893 F.2d 370, 373–74 (D.C. Cir. 1990) (equitable relief under the Act must rest on the specific grants in § 552a(g)(2)–(3), not on general authority); *Scott v. Conley*, 937 F. Supp. 2d 60, 79 (D.D.C. 2013) ("Our circuit precedent suggests that injunctive relief is not available for suits alleging violations . . . brought under either § 552a(g)(1)(C) or (g)(1)(D)."). Because Plaintiff has not pleaded a § 552a(g)(1)(A) or (B) claim, Prayer ¶ (b) for expungement or correction fails as a matter of law and should be dismissed with prejudice.

Even if Plaintiff wished to pivot to an amendment theory, the Act requires a predicate administrative process that the Complaint does not allege. Congress conditioned amendment relief on a request to the agency under § 552a(d)(2), followed by an administrative appeal from any adverse determination, and only then judicial review under § 552a(g)(1)(A). *See* 5 U.S.C. § 552a(d)(2), (3), (g)(1)(A), (g)(2). The D.C. Circuit enforces that exhaustion requirement. *See Dickson v. Office of Pers. Mgmt.*, 828 F.2d 32, 40–41 (D.C. Cir. 1987) (affirming dismissal where the plaintiff failed to pursue the Act's amendment procedures); *Haase*, 893 F.2d at 373–74 (same). District courts in this Circuit do likewise. *See, e.g., Rogers v. Dep't of Just.*, 720 F. Supp. 2d 147, 159–61 (D.D.C. 2010) (dismissing amendment claim for failure to exhaust). Plaintiff pleads neither an amendment claim nor any request-and-appeal sequence; his prayers for expungement and correction therefore cannot be cured in this action and any request for equitable relief should be dismissed.

- 8 -

## II.    Plaintiff Fails to Establish the Army Willfully or Intentionally Disclosed Plaintiff's Photograph

Accepting the Complaint's factual narrative as true for Rule 12(b)(6) purposes, the pleaded disclosure is the quintessential "frolic" by an individual soldier acting outside any legitimate agency purpose and in direct contravention of Army policy—not an "agency" act undertaken "in a manner which was intentional or willful" by the Department of the Army. 5 U.S.C. § 552a(g)(4). Plaintiff alleges that a Staff Sergeant—prompted by a private request from a civilian (Michael Chambers), motivated by the civilian's personal relationship with Plaintiff's former partner—accessed and furnished a photograph and purported information about Plaintiff's service. Compl. (ECF No. 2) ¶¶ 29–36, 52–58.

As alleged, such conduct would be in direct contravention of Army policy. Army Regulation 25-22 requires that Personally Identifiable Information be afforded reasonable safeguards to prevent inadvertent or unauthorized disclosure during processing, storage, transmission, and disposal. Army Reg 25-22, para. 5-2. According to the Complaint, moreover, the Army allegedly took steps to correct this unauthorized action. Compl. (ECF No. 2) ¶¶ 44–47. Those allegations, taken together, fail to plausibly plead any intentional or willful disclosure attributable to the Army but rather describe an unauthorized, personal-capacity leak contrary to agency rules.

Judge Lamberth's "Filegate" decision underscores that Privacy Act damages are not a form of automatic respondeat superior. In *Alexander v. FBI*, the court recognized that the Act's civil remedy runs against an "agency," but liability turns on agency action—as opposed to purely personal, unauthorized conduct by an employee—and the intentional/willful standard remains a "stringent" one. 971 F. Supp. 603, 607–08 (D.D.C. 1997). Where the pleaded facts allege that the alleged disclosure was not directed, condoned, or carried out to advance any agency function,

- 9 -

courts treat the unauthorized conduct as a personal act that does not trigger the United States'
limited waiver of sovereign immunity under § 552a(g). *See id*. at 608–09 (emphasizing that the
Act does not displace other remedies against individuals acting outside their official authority).

*Convertino* confirms both the burden allocation and what is missing here. There, the district
court allowed a Privacy Act claim to proceed only because the plaintiff plausibly alleged a leak by
Department of Justice personnel acting in their official capacities and sought discovery to identify
the culpable official(s). *Convertino v. U.S. Dep't of Justice*, 393 F. Supp. 2d 42, 44–47 (D.D.C.
2005). *See also Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 98–102 (D.C. Cir. 2012) (noting
that identification of the disclosing official and connecting the disclosure to agency action is
central to the claim and remanding to the district court to grant a stay to permit the plaintiff further
investigation). By contrast, Plaintiff here pleads no agency authorization, policy, practice, or
supervisory acquiescence; to the contrary, the Complaint itself alleges immediate agency
repudiation (a substantiated administrative investigation) and discipline of the employee. Compl.
(ECF No. 2) ¶¶ 44–47. That is the opposite of "flagrant disregard" attributable to the agency. *See
Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984) (willfulness requires conduct
"without grounds for believing it to be lawful" or in "flagrant disregard" of rights). On these
allegations, Plaintiff has not nudged his claim from an individual's alleged misconduct to an
"agency" act undertaken intentionally or willfully.

Courts confronting alleged one-off leaks by line employees have long rejected efforts to
convert an unauthorized personal act into agency willfulness. In *Blanton*, the court concluded that
an unauthorized "leak" by an agency employee, undertaken without supervisory direction and
contrary to agency policy, did not constitute intentional or willful conduct by the agency within
the meaning of § 552a(g)(4). *Blanton v. Dep't of Just.*, No. 82-0452, 1984 U.S. Dist. LEXIS 24925

(D.D.C. Feb. 17, 1984). The Complaint here pleads that very pattern: a disclosure allegedly made to private parties for personal reasons; no allegation of agency purpose, instruction, or benefit; and alleged corrective action against the employee. Compl. (ECF No. 2) ¶¶ 29–36, 44–47. Under *Blanton*, that is not an actionable "agency" disclosure.

Plaintiff's own theory further distances the conduct from the agency. He asserts that the image came "from a PAO [Public Affairs Office] server." Compl. (ECF No. 2) Ex.1 at 78. That assertion underscores the personal, off-mission character of the alleged leak: a Soldier allegedly accessed internal imagery or public-affairs content for a private vendetta at the behest of a civilian acquaintance. Nothing in those allegations raises a plausible inference that the Army, as an "agency," intentionally or willfully "disclosed" Plaintiff's record "by any means of communication" within the scope of § 552a(b) and (g)(4). *See Alexander*, 971 F. Supp. at 608–09; *Blanton*, 1984 U.S. Dist. LEXIS 24925, *6–9.

*Convertino* also illustrates the pleading gap here: that plaintiff tied the disclosure to agency actors and sought discovery to identify the responsible official. 393 F. Supp. 2d at 46–47; 684 F.3d at 98–101. Plaintiff, by contrast, names the putative leaker and simultaneously alleges that the Army investigated and disciplined the alleged individual. Compl. (ECF No. 2) ¶¶ 44–47. Those allegations foreclose any plausible inference that the disclosure reflected "agency" willfulness rather than an employee's unauthorized frolic. *See Albright*, 732 F.2d at 189; *Sussman*, 494 F.3d at 1121–23.

Finally, *Alexander* makes clear that when federal personnel engage in egregious privacy invasions outside the scope of their duties, the Privacy Act does not displace other potential remedies against those actors, such as tort remedies for invasion of privacy; it simply withholds damages against the agency absent intentional or willful agency conduct. 971 F. Supp. at 608–09.

- 11 -

That is precisely the model alleged here: a personal misuse of access, followed by agency repudiation and discipline. Because the Complaint, on its face, alleges a rogue disclosure and not an intentional or willful "agency" act, the Privacy Act damages claim fails as a matter of law and should be dismissed under Rule 12(b)(6).

Moreover, Plaintiff fails to plead that any supervisor or records custodian approved the soldier's alleged access or transmission. Plaintiff fails to plead that the soldier was acting within the scope of his Army duties when he allegedly accessed and sent the materials; indeed, the Complaint does not plead what the soldier's position or responsibilities include, whether they involve access to human resource systems, or whether the access was in furtherance of the soldier's official responsibilities.[2]

In short, whether considered under Rule 12(b)(1) or 12(b)(6), Plaintiff has failed to plausibly plead any knowledge on the part of the agency or any managerial members of the agency necessary to establish an intentional or willful agency disclosure. Accordingly, Plaintiff's Privacy Act claim for damages should be dismissed.

---

[2] This framework requiring managerial knowledge of a violation by a non-supervisory employee is common in agency liability cases. *See, e.g., Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013) ("To establish liability when a plaintiff is harassed by his or her co-workers, the plaintiff must prove that the employer was at least negligent in not preventing or correcting the harassment."); *compare Darnell v. Milwaukee Elec. Tool Corp.*, Civ. A. No. 17-0131, 2018 U.S. Dist. LEXIS 12265, at *7-8 (N.D. Miss. Jan. 24, 2018) ("Although Plaintiff states in his opposition brief that he had reported the harassment to his supervisor and an HR manager, Plaintiff does not allege that fact in his complaint, and no other facts support an inference that Defendant knew or should have known the harassment was taking place" and thus Plaintiff "has not pled facts that could establish a hostile work environment claim."), *with Swiderski v. Urban Outfitters,* Civ. A. No. 14-6307, 2015 U.S. Dist. LEXIS 72291, at *12-13 (S.D.N.Y. June 4, 2015) (denying motion to dismiss co-worker harassment claim where the complaint pleaded notice to management of the harassing conduct).

III.    **The Complaint Does Not Establish a § 552a(b) Disclosure From a "System of Records"**

Plaintiff's disclosure theory fails at the threshold because the Privacy Act reaches only disclosures of a "record which is contained in a system of records"—in other words, information actually retrieved by a personal identifier from a qualifying system. 5 U.S.C. § 552a(a)(5), (b). The D.C. Circuit requires more than the possibility that identical information exists somewhere inside an agency database: the plaintiff must plausibly allege that the disclosure resulted from an actual identifier-based retrieval. *See Henke v. Dep't of Commerce*, 83 F.3d 1453, 1459 (D.C. Cir. 1996); *Tobey v. NLRB*, 40 F.3d 469, 471–73 (D.C. Cir. 1994); *Krieger v. Dep't of Just.*, 529 F. Supp. 2d 29, 47 (D.D.C. 2008); *Fisher v. NIH*, 934 F. Supp. 464, 473 (D.D.C. 1996).

The Complaint does not. It speculates that a head-and-shoulders image came from Plaintiff's Official Military Personnel File, but pleads no facts that anyone queried Plaintiff's name or personal identifiers in a "system of records notice"-covered personnel system. See *Iqbal*, 556 U.S. 662, 678–79 (2009); *Twombly*, 550 U.S. 544, 555–57 (2007). To the contrary, Plaintiff's own exhibit attributes the source to "a PAO server," consistent with a Public Affairs photo stored on a unit repository rather than an identifier-retrieved personnel record. Compl. (ECF No. 2) Ex. 1 at 78; *see also* Compl. Ex. 2. Because § 552a(b) liability attaches only when a disclosure stems from actual retrieval by personal identifier from a system of records, the claim is implausible and should be dismissed. See 5 U.S.C. § 552a(a)(5), (b); *Henke*, 83 F.3d at 1459; *Krieger*, 529 F. Supp. 2d at 47; *Fisher*, 934 F. Supp. at 473.

IV.    **The Complaint Does Not Establish a § 552a(b) Disclosure Caused "Actual Damages"**

The Supreme Court has held that the Privacy Act's money-damages remedy is limited to "actual damages" understood in the traditional "special damages" sense—proven pecuniary losses, not mental or emotional distress. *FAA v. Cooper*, 566 U.S. 284, 299–303 (2012). The "terms of

- 13 -

[the Government's] consent to be sued in any court define that court's jurisdiction," and waivers must be "unequivocally expressed" and "strictly construed in favor of the sovereign." *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *Lane v. Peña*, 518 U.S. 187, 192 (1996).

It follows that demonstrating a concrete, pecuniary injury "sustained … as a result of" an intentional or willful violation, 5 U.S.C. § 552a(g)(4)(A), is part of the sovereign's limited consent to suit and therefore a jurisdictional prerequisite the plaintiff must carry, not a detail that can be presumed at the pleading stage. *Lane*, 518 U.S. at 192; *Cooper*, 566 U.S. at 299–303; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Moreover, to have standing to assert a Privacy Act claim, Plaintiff must plead facts that establish a concrete injury fairly traceable to the alleged violation that is redressable by the Court. *Clapper v. Amnesty Int'l,* 568 U.S. 398, 409 (2013).  In *Spokeo, Inc. v. Robins*, the Supreme Court explained that "Article III standing requires a concrete injury even in the context of a statutory violation" and, "[f]or that reason, [a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement."  578 U.S. 330, 341 (2016).

Here, Plaintiff lacks standing, or has failed to state a claim, because the only asserted "adverse effect" from the alleged Privacy Act violation is that he allegedly "spent thousands of dollars" on mental-health treatment (Compl. ¶ 55). The complaint's bare assertion that Plaintiff spent a non-specific amount of money on mental health treatment does not establish jurisdiction or plausibly plead a claim because it neither alleges the "special damages" *Cooper* requires nor plausibly connects the non-specific pecuniary outlay to the alleged disclosure through specifically pled facts that could satisfy the applicable "as a result of" causation requirement in the statute. *Cooper*, 566 U.S. at 299–303; 5 U.S.C. § 552a(g)(4)(A).

Moreover, to state a claim, Plaintiff must plead sufficient facts to establish that the actual, pecuniary harm described was proximately caused by the alleged violation. *See Albright*, 732 F.2d at 187 (affirming the judgment because other factors, besides the privacy violation, were "potential, and more probable, cause[s] of the claimed injuries"); *Mandel v. OPM*, 79 F. App'x 479, 481 (2d Cir. 2003) (no causal connection where plaintiff's "falsifications and omissions in his application for federal employment were, independently, sufficient to find him unsuitable for federal employment"); *Velikonja v. Mueller*, 362 F. Supp. 2d 1, 15 (D.D.C. 2004) (same). While Plaintiff alleges in a conclusory fashion that he required mental health treatment for the alleged disclosure, that conclusory allegation is insufficient to plausibly plead the requisite causation for standing or to state a damage claim given the other pre-existing mental health issues (Compl. ¶ 41, alleging prior "suicidal thoughts") and extreme stressors alleged in the Complaint as chronicled more fully below. The disclosure alleged by Plaintiff involved nothing more than a photograph of him in military uniform. The photograph does not depict him in a compromising position, engaged in a humiliating activity, or performing an objectionable act. *See* Compl Ex. 2.

Indeed, the harm allegedly inflicted by Ms. Pasewicz in ways totally unrelated to the photograph appears, under the applicable plausibility standard, to far exceed that caused by the release of a relatively innocuous photograph. Throughout their relationship and its aftermath, Plaintiff alleges that Ms. Pasewicz subjected him to severe physical violence, verbal abuse, and psychological torment. Plaintiff testified that she physically assaulted him seven or eight times, including slapping him in the face while calling him an offensive slur—knowing he was bisexual—and on another occasion simply giggling and walking away after striking him. Compl. Ex. 1 at 68–69; Compl. ¶41. On February 8, 2024, Plaintiff testified that after Ms. Pasewicz drank heavily, she struck him and threatened him with a kitchen knife. Compl. Ex. 1 at 69–70. Plaintiff

- 15 -

further testified that Ms. Pasewicz later screamed repeatedly that her new boyfriend "is going to . . . kill you" while "throwing her body around" Plaintiff's car. Compl. Ex. 1 at 75.

Plaintiff alleges that Ms. Pasewicz's verbal and psychological abuse was equally cruel and calculated. Ms. Pasewicz admitted that she wanted "to embarrass him" and cause Plaintiff "mental and emotional distress." Compl. Ex. 1 at 61; Compl. ¶¶ 28, 35. Plaintiff testified that she texted him: "I'm not done. Let's see that anxiety come," deliberately targeting his known anxiety issues. Compl. Ex. 1 at 25; Compl. ¶ 28. Plaintiff alleges that she told him she hoped his "children would die in front of [him]" knowing he had confided in her about having suicidal thoughts. Compl. Ex. 1 at 39, 85-86; Compl. ¶¶ 39, 41. Plaintiff testified that she explicitly stated: "I'm here to break you so you can finally get some help." Compl. Ex. 1 at 26. Plaintiff further alleges that despite repeatedly asking her to stop contacting him and leave him alone, she refused, continuing her alleged harassment campaign and even attempting to get him "riled up" so she could "get [him] put away" by contacting his university. Compl. Ex. 1 at 79, 85; Compl. ¶ 40.

Plaintiff alleges that this sustained abuse—very little having to do with the innocuous photograph—caused him severe psychological harm, requiring him to enroll "in intensive therapy and medication," lose 35 pounds, move apartments "so she wouldn't know where I live," develop "a new nervous tic," and log his GPS location every 15 minutes out of fear of false accusations. Compl. Ex. 1 at 82-83; Compl. ¶ 55.

Where intervening, private-party conduct and unrelated personal disputes predominate the narrative, and Plaintiff acknowledges pre-existing mental health issues and significant life stressors, the pleading must do more than make a generic assertion that mental health care expenses were incurred due to the disclosure at issue when there is another "potential, and more probable, cause" of his need for mental health treatment. *See Albright*, 732 F.2d at 187. The pleading must

- 16 -

provide additional, concrete facts to plausibly explain how the alleged disclosure to Plaintiff of his own Army photograph could require mental health treatment independent of those existing issues identified in the pleading.

The Supreme Court has made clear that recovery under the Act's damages clause requires allegations of actual, pecuniary harm and that generalized allegations of mental or emotional distress are insufficient to establish actual damages. *Cooper*, 566 U.S. at 299-304. Where, as here, the complaint pleads no facts permitting the Court to verify that any alleged expenditure for mental health treatment was caused by the alleged Privacy Act violation rather than alleged preexisting mental health issues and extreme domestic abuse unrelated to the disclosure, the plaintiff has not carried his jurisdictional burden under the sovereign's strictly construed waiver nor plausibly pled the elements of a section 552a(g)(1)(D) claim. *Lane*, 518 U.S. at 192; *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *see also Chichakli v. Tillerson*, 882 F.3d 229, 233 (D.C. Cir. 2018) ("To state a claim under the Privacy Act, a plaintiff must establish that (1) the agency violated a provision of the Act; (2) the violation was intentional or willful; and (3) the violation had an "adverse effect" on the plaintiff in the form of actual damages.").

*   *   *

**CONCLUSION**

For the foregoing reasons, the Court should grant this motion and dismiss the complaint.


Dated:  December 2, 2025                        Respectfully submitted,

                                               JEANINE FERRIS PIRRO
                                               United States Attorney

                                               PETER C. PFAFFENROTH, DC Bar 496637
                                               Chief, Civil Division

                                               By: _____ */s/ Brian C. Tracy*_____
                                                   BRIAN C. TRACY
                                                   Special Assistant United States Attorney
                                                   601 D Street, NW
                                                   Washington, DC 20530
                                                   (202) 252-7113

                                               *Attorneys for the United States of America*

- 18 -