**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

GARY W. WINTERS,

        Plaintiff,

    v.

DEPARTMENT OF THE ARMY, et al.,

        Defendant.

Civil Action 1:25-cv-01314 (LLA)

**PLAINTIFF'S OPPOSITION TO DEFENDANT' MOTION TO DISMISS
AND MEMORANDUM IN SUPPORT THEREOF**

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ...................................................................................... 3

**BACKGROUND** ..................................................................................................... 5

**STATEMENT OF THE LAW** ................................................................................... 7

    I.    **Motions under Federal Rule of Civil Procedure Rule 12(b)(1) and 12(b)(6).** ................................................................................... 7

    II.    **Privacy Act Claims Generally** ............................................................... 8

**ARGUMENT** ........................................................................................................ 9

    I.    **The Defendant Willfully and Intentionally Disclosed Mr. Winters' Records** ....................................................................................... 9

    II.    **The Complaint Establishes a Disclosure From a "System of Records."** ....................................................................................... 16

    III.    **Mr. Winters' Complaint Establishes a Disclosure with Attendant "Actual Damages."** ............................................................................ 18

**CONCLUSION** ................................................................................................... 22

# TABLE OF AUTHORITIES

**CASES**

*Albright v. United States*, 732 F.2d 181 (D.C. Cir. 1984) ................................................ 10, 13, 14

*Alexander v. FBI*, 971 F. Supp. 603 (D.D.C. 1997) .................................................................. 12, 13

*Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137 (D.C. Cir. 2011) ............................................... passim

*Ashbourne v. Hansberry*, No. 12-CV-1153, 2015 WL 1130319 (D.D.C. Nov. 24, 2015) ........... 20

*Ashbourne v. Hansberry*, 703 F. App'x 3 (D.C. Cir. 2017) ....................................................... 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................. 8, 9

*Auld v. United States*, No. CV 22-3129, 2023 WL 6141666 (D.D.C. Sep. 20, 2023) .................... 8

*Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572 (D.C. Cir. 2013) ........................................................ 12

*Banneker Ventures, LLC v. Graham*, 798 F.3d 1119 (D.C. Cir. 2015) ........................................ 23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 9

*Blanton v. Dep't of Just.*, No. 82-0452, 1984 U.S. Dist. LEXIS 24925 (D.D.C. Feb. 17, 1984)  14, 15

*Chambers v. U.S. Dep't of Interior,* 568 F.3d 998 (D.C. Cir. 2009) .............................................. 9

*Cloonan v. Holder*, 768 F. Supp. 2d 154 (D.D.C. 2011) ............................................................ 18

*Convertino v. U.S. Dep't of Justice*, 393 F. Supp. 2d 42 (D.D.C. 2005) ...................................... 13

*Convertino v. U.S. Dep't of Justice*, 684 F.3d 93 (D.C. Cir. 2012) ............................................. 13

*Darnell v. Milwaukee Elec. Tool Corp.*, 2018 WL 542970 (N.D. Miss. Jan. 24, 2018) .............. 12

*Doe v. Chao*, 540 U.S. 614 (2004) .......................................................................................... 20

*Doe v. U.S. Dep't of Treasury*, 706 F. Supp. 2d 1 (D.D.C. 2009) ............................................. 18

*Doe v. U.S. Department of Justice*, 660 F. Supp. 2d 31 (D.D.C. 2009) ............................ 9, 17, 20

*Doe v. U.S. Dept. of Labor*, 451 F.Supp.2d 156 (D.D.C. 2006) ............................................. 10, 11

*Doe v. U.S. Postal Service,* 317 F.3d 339, 342 (D.C. Cir. 2003) ................................................. 18

*Dong v. Smithsonian Inst.*, 943 F.Supp. 69 (D.D.C.1996) .......................................................... 11

*Dong v. Smithsonian Inst.,* 125 F.3d 877 (D.C. Cir. 1997) ......................................................... 11

*FAA v. Cooper,* 566 U.S. 284 (2012) ...................................................................................... 20

*Feldman v. CIA*, 797 F. Supp. 2d 29 (D.D.C. 2011) .............................................................. 16, 19

*In re U.S. Office of Personnel Management Data Security Breach Litigation*, 928 F.3d 42 (D.C. Cir. 2019) ......................................................................................................... 21, 22

*Kelley v. FBI*, 67 F. Supp. 3d 240 (D.D.C. 2014) ...................................................................... 19

*Laningham v. Navy*, 813 F.2d 1236 (D.C. Cir. 1987)............................................................... 15, 16

*Lombrano v. Secretary of the Air Force,* 2022 WL 392308 (D.D.C. February 9, 2022) ............. 16

*Maydak v. United States*, 630 F.3d 166 (D.C. Cir. 2011)....................................................... 10, 11

*Mulhern v. Gates*, 525 F.Supp.2d 174 (D.D.C.2007) .................................................................. 20

*Paige v. Drug Enf't Admin.*, 665 F.3d 1355 (D.C. Cir. 2012) ........................................................ 9

*Playboy Enterprises, Inc. v. Department of Justice, et al.,* 219 U.S. App. D.C. 343, 677 F.2d 931

   (D.C. Cir. 1982).................................................................................................................. 15

*Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106 (D.C. Cir. 2007) ......................................... 13, 14

*Swiderski v. Urban Outfitters,* 2015 WL 3513088 (S.D.N.Y. June 4, 2015) ............................... 12

*Tobey v. NLRB*, 40 F.3d 469 (D.C. Cir. 1994)................................................................................ 18

*Trudeau v. FTC*, 456 F.3d 178 (D.C. Cir. 2006) ............................................................................. 9

*VoteVets Action Fund v. U.S. Dep't of Veterans Affs.*, 992 F.3d 1097 (D.C. Cir. 2021) .............. 23

*White v. Office of Pers. Mgmt.*, 840 F.2d 85 (D.C. Cir. 1988) ...................................................... 10

*Wright v. Foreign Serv. Griev. Bd.*, 503 F. Supp. 2d 163 (D.D.C. 2007).............................. passim

## STATUTES

5 U.S.C. § 552a........................................................................................................................... 14

5 U.S.C. § 552a(a)(5)......................................................................................................... 17, 18, 19

5 U.S.C. § 552a(b) ..................................................................................................................... 9, 20

5 U.S.C. § 552a(g)(1)(D) ............................................................................................................... 20

5 U.S.C. § 552a(g)(4)...................................................................................................................... 10

## OTHER AUTHORITIES

S.Rep. No. 1183, 93d Cong., 2d Sesss. 1–2, reprinted in 1974 U.S. Code Cong. & Ad. News

   6916, 6917, and Legislative History of the Privacy Act of 1974, at 154–155 (1976................ 13

## RULES

Fed. R. Civ. Pro. 12(b)(1) ............................................................................................................... 8

Fed. R. Civ. Pro. 12(b)(6) ............................................................................................................... 8

**BACKGROUND**

Plaintiff, former Staff Sergeant Gary W. Winters, served in the United States Army from November 15, 2010, to January 13, 2020, when he was discharged with an "honorable" service characterization. While on active duty, Mr. Winters received, in addition to other awards and decorations, an Army Commendation Medal and three Army Achievement Medals. *See* ECF No. 1 ("Compl."), at ¶¶ 15-16.

In August 2023, Mr. Winters met Morgan Pasewicz, and the pair began dating a few months later around Thanksgiving of that same year. Compl., at ¶¶ 17, 19. The relationship did not last, however, and by February 2024 the pair had become estranged. *Id.* at ¶ 20. By May 2024, both Mr. Winters and Ms. Pasewicz had filed cross-petitions for domestic violence protection orders against each other in the General Court of Justice District of Court Division, in Wake County, North Carolina. *Id.* at ¶ 21.

The Court held a hearing related to these cross-petitions on June 24, 2024. *Id.* at ¶ 22. At the hearing, in an admitted deliberate attempt to embarrass, humiliate, and traumatize Mr. Winters, Ms. Pasewicz revealed that she had obtained documents from an official copy of Mr. Winters' Official Military Personnel File ("OMPF"), which contained personnel documents relating to Mr. Winters' Army service. *Id.* at ¶ 24. Ms. Pasewicz used these documents, including an official photograph of Mr. Winters, to advance her malicious and entirely false claim that Mr. Winters had lied about details of his prior Army service. *Id.* at ¶ 25-26, 29-30, 36-38. Ms. Pasewicz did this, by her own admission, to embarrass and traumatize Mr. Winters, who she had learned during their relationship suffered from mental health issues. *Id.* at ¶ 26-27, 28 (Ms. Pasewicz told Mr. Winters over text, "Come on, pussy. I'm not done. Let's see that anxiety come"), 35, 41.

But Ms. Pasewicz did not obtain documents from Mr. Winters' OMPF on her own. Instead,

the same Army in which Mr. Winters had served with distinction for nearly a decade gave them to her. Staff Sergeant Thomas E. Dines, a former member of Mr. Winters' unit, obtained Mr. Winters' OMPF and then gave portions of it to Mr. Michael Chambers, Ms. Pasewicz's new boyfriend, who in turn gave portions of it to Ms. Pasewicz. *Id.* at ¶¶ 29-30, 32-33. In her testimony before the court, Ms. Pasewicz made clear that Staff Sergeant Dines had obtained Mr. Winters' OMPF by submitting a request for the records. *See id.* at ¶ 33 (detailing Ms. Pasewicz's testimony that Staff Sergeant Dines went "through the proper channels to get those records [i.e., Mr. Winters' OMPF]. That means he submitted a request").

The contents of Mr. Winters' OMPF, in Ms. Pasewicz's mind, validated her belief that Mr. Winters had been lying about his Army service. *See, e.g.,* Compl., at ¶¶ 26, 29-31. After obtaining Mr. Winters' OMPF, Ms. Pasewicz accused Mr. Winters over text of committing "stolen valor" on March 18, 2024, called Mr. Winters a "faggot," and stated that she hoped that his "children would die in front of [him]." *Id.*, at ¶¶ 31, 39. Ms. Pasewicz admitted the purpose of her remarks was to further erode Mr. Winters' mental state: she hoped, on this and other occasions, by getting Mr. Winters "riled up," she could "get [him] put away." *Id.*, at ¶ 40.

After the hearing, Mr. Winters complained about Staff Sergeant Dines' illegal dissemination of his OMPF to the Department of the Army's Office of the Inspector General. *Id.*, at ¶ 43. In response, the Defendant initiated an Army Regulation ("Army Reg.") 15-6 investigation into Staff Sergeant Dines' illegal actions. *Id.*, at ¶ 44. The AR 15-6 investigation substantiated Mr. Winters' complaint, and disciplined Staff Sergeant Dines, though Department of the Army did not share how with Mr. Winters, citing privacy concerns. *Id.*, at ¶ 45-46.

As a result of the degrading and outrageous treatment he experienced at Ms. Pasewicz's hands, which was made possible by Staff Sergeant Dines' illegal disclosure of his OMPF, Mr.

Winters was forced to seek additional and ongoing mental health care, costing him thousands of dollars to date. Compl. at ¶¶55, 61.

Mr. Winters filed suit in this Court, against the Department of the Army, seeking damages under the Privacy Act, 5 U.S.C. § 552a(g)(1)(D), on April 29, 2025. Defendant filed its Motion to Dismiss and Memorandum in Support Thereof on December 2, 2025. ECF No. 8 ("Def. Mot."). Mr. Winters now comes with his Opposition.

## STATEMENT OF THE LAW

### I.    Motions under Federal Rule of Civil Procedure Rule 12(b)(1) and 12(b)(6).

A plaintiff bears the burden of demonstrating a court's subject-matter jurisdiction over the claims at issue in a motion to dismiss under Fed. R. Civ. Pro. 12(b)(1). And under Fed. R. Civ. Pro. 12(b)(6), the Court will dismiss a complaint if it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

When a defendant files a motion to dismiss under Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6) simultaneously, the court first examines the Fed. R. Civ. Pro. 12(b)(1) challenge and then assesses the Fed. R. Civ. Pro. 12(b)(6) challenge. *Auld v. United States*, No. CV 22-3129, 2023 WL 6141666, at *2 (D.D.C. Sep. 20, 2023). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint…will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Griev. Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted).

A motion made under Fed. R. Civ. Pro. 12(b)(6) tests whether a complaint has successfully "state[d] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While detailed factual

allegations are not necessary to withstand a Fed. R. Civ. Pro. 12(b)(6) challenge, a plaintiff must nonetheless provide "more than labels or conclusions" or "a formulaic" recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

When assessing a motion to dismiss under both Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6), however, courts must assume that all well-pleaded factual allegations in the complaint are true and additionally grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). Still, a court is not required to accept "a legal conclusion couched as a factual allegation" or an inference "unsupported by the facts set out in the complaint." *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal citation and quotation marks omitted). Yet a claim is facially plausible when a plaintiff pleads factual content that enables a court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## II.    Privacy Act Claims Generally.

The Privacy Act generally "prohibits a federal agency from 'disclos[ing] any record which is contained in a system of records by any means of communication to any person.'" *Paige v. Drug Enf't Admin.*, 665 F.3d 1355, 1359 (D.C. Cir. 2012) (alteration in original) (quoting 5 U.S.C. § 552a(b)). Privacy Act claims for monetary damages based on improper disclosure have four elements: 1) the disclosed information is a record contained within a system of records; 2) the agency improperly disclosed the information; 3) the disclosure was willful or intentional; and 4) the disclosure adversely affected the plaintiff. *Doe v. U.S. Department of Justice*, 660 F. Supp. 2d 31, 44–45 (D.D.C. 2009), citing *Chambers v. U.S. Dep't of Interior,* 568 F.3d 998, 1006 (D.C. Cir. 2009).

## ARGUMENT

### I.     The Complaint Establishes that Defendant Willfully and Intentionally Disclosed Mr. Winters' Records.[1]

A Privacy Act plaintiff must show that the disclosure of the information by the agency was willful and intentional. 5 U.S.C. § 552a(g)(4). But not "every affirmative or negligent action that might be said technically to violate the Privacy Act's provisions" leads to agency liability. *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984). And when assessing the third element of the Privacy Act, "the words 'intentional' and 'willful'… do not have their vernacular meanings." *White v. Office of Pers. Mgmt.*, 840 F.2d 85, 87 (D.C. Cir. 1988). Rather, to show that a disclosure under the Privacy Act was willful and intentional, a plaintiff must establish at least one of the following:

1) The disclosure was "so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful"; or,

2) The disclosure was "somewhat greater" than grossly negligent; or,

3) The disclosure was "committed without grounds for believing" that it was lawful; or,

4) The disclosure was "in flagrant disregard of others' rights under the [Privacy] Act."

*Maydak v. United States*, 630 F.3d 166, 180 (D.C. Cir. 2011); *see also Doe v. U.S. Dept. of Labor*, 451 F.Supp.2d 156, 176 (D.D.C. 2006), citing *Albright,* 732 F.2d at 189.

---

[1] Defendant argues that Mr. Winters did not plead a 5 U.S.C. § 552a(g)(2)–(3) claim, and so cannot request expungement or correction. Additionally, because Mr. Winters did not request amendment of his records under 5 U.S.C. § 552a(d)(2), Defendant argues that Mr. Winters cannot amend his complaint to incorporate a 5 U.S.C. § 552a(g)(2)–(3) claim at this time, because he has not gone through the administrative process. *See* Def. Mot., "Argument", §I, "Equitable Relief Is Limited Under 5 U.S.C. § 552a(g), Therefore Prayer (b) Fails as a Matter of Law." Mr. Winters concedes that Defendant is correct in this regard.

In *Dong v. Smithsonian Inst.,* 943 F.Supp. 69, 73 (D.D.C.1996), *reversed on other grounds*, 125 F.3d 877 (D.C. Cir. 1997), this Court held that the defendant's disclosures were intentional and willful when defendant agency officials knew they were subject to the Privacy Act yet "chose to ignore the law" in a way which "constitute[d] reckless disregard for the Privacy Act rights" of agency staff. By contrast, in *Doe v. U.S. Dept. of Labor,* 451 F.Supp.2d at 177-178, this Court held that the agency was not liable because the question of whether a certain disclosure was routine use within the meaning of the Privacy Act had not yet been definitively settled.

Accepting "as true all factual allegations contained in" Mr. Winters' Complaint, *Wright*, 503 F. Supp. 2d at 170, and granting Mr. Winters "the benefit of all inferences that can be derived from the facts alleged," *Am. Nat'l Ins. Co.*, 642 F.3d at 1139, Mr. Winters has pled sufficient facts to allege that Defendant willfully and intentionally disclosed Mr. Winters' records. The Complaint chronicles that Staff Sergeant Dines, an active duty soldier and a member of Mr. Winters' unit, obtained Mr. Winters' OMPF and gave portions of it to Mr. Chambers, who in turn gave those portions to Ms. Pasewicz. *Id.* at ¶¶ 29-30, 32-33. Staff Sergeant Dines' conduct here certainly rises to the level of "so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful…committed without grounds for believing" that it was lawful, and "in flagrant disregard of [Mr. Winters'] rights under the [Privacy] Act." *Maydak*, 630 F.3d at 180. And Defendant all but admits that Staff Sergeant's conduct was unlawful: "such conduct would be in direct contravention of Army policy…[requiring] Personally Identifiable Information be afforded reasonable safeguards to prevent inadvertent or unauthorized disclosure during processing, storage, transmission, and disposal." Def. Mot. at 10, *citing* Army Reg. 25-22, para. 5-2. For this reason, Staff Sergeant Dines' conduct is analogous to the agency employees in *Dong*: he either did know, or should have known, that his behavior violated Army policy. *See* 943 F.Supp. at 73.

But Defendant argues that Staff Sergeant Dines' conduct nevertheless does not confer liability on the Defendant, because "the pleaded disclosure is the quintessential "frolic" by an individual soldier acting outside any legitimate agency purpose and in direct contravention of Army policy—not an "agency" act undertaken "in a manner which was intentional or willful" by the Department of the Army." Def. Mot. at 10. But the Defendant can cite no authority to support the position that a distinction exists between the actions of an agency and its employees under the Privacy Act. While Defendant makes many valiant efforts to do so, all fail.

The Defendant has compiled a seemingly impressive collection of cases regarding agency law, but none of these cases involve a claim under the Privacy Act. *See* Def. Mot. at 13, n. 2, *citing Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572 (D.C. Cir. 2013) ("alleging violations of federal anti-discrimination laws, and asserting a claim for defamation"), *Darnell v. Milwaukee Elec. Tool Corp.*, 2018 WL 542970 (N.D. Miss. Jan. 24, 2018) (plaintiff claimed hostile work environment based on his race), *Swiderski v. Urban Outfitters,* 2015 WL 3513088 (S.D.N.Y. June 4, 2015) (alleging causes of action for discrimination and retaliation in violation of N.Y.C. Admin. Code § 8–107 and N.Y. Exec. Law § 296). These cases do nothing to advance Defendant's effort to draw a distinction between the actions of an agency and its employees under the Privacy Act.

The Defendant does cite some cases which allegedly demonstrate that "an unauthorized personal act" is not the same as "agency willfulness." Def. Mot. at 11. Yet a closer look reveals this to be a façade. None of these cases stand for the proposition Defendant claims.

Defendant argues that *Alexander v. FBI*, 971 F. Supp. 603, 607–08 (D.D.C. 1997), "recognized that the [Privacy] Act's…liability turns on agency action—as opposed to purely personal, unauthorized conduct by an employee—and the intentional/willful standard remains a "stringent" one." Def. Mot. at 10. But nothing to support this principle appears in *Alexander*; even

the word "stringent" is nowhere found in the Court's opinion. *See generally* 971 F. Supp. 603.

Quite the reverse: the *Alexander* Court specifically singled out rogue individual employees, not

agencies collectively and carefully crafting policy, as Congress' primary targets when passing the

Privacy Act:

> Plaintiffs have alleged that their personal FBI files, which were created for a legitimate but narrow purpose, were inadequately maintained and improperly disclosed to *White House employees* who were not acting in the interest of the United States, but for partisan political purpose. As the comments by the Senate Committee demonstrate, *the Privacy Act was passed by Congress to prevent exactly this kind of behavior* if that is what occurred.

*Alexander,* 971 F. Supp. at 612, *citing* S.Rep. No. 1183, 93d Cong., 2d Sesss. 1–2, reprinted

in 1974 U.S. Code Cong. & Ad. News 6916, 6917, and Legislative History of the Privacy Act of

1974, at 154–155 (1976) (emphasis added).

Next, the Defendant dragoons *Convertino v. U.S. Dep't of Justice*, 393 F. Supp. 2d 42, 44–

47 (D.D.C. 2005), and *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 98–102 (D.C. Cir. 2012),

into the service of its alleged rule that "agency authorization, policy, practice, or supervisory

acquiescence" is required under the Privacy Act's willful and intentional requirement. Def. Mot.

at 11. The first case does not address Privacy Act claims at all. *See generally Convertino*, 393 F.

Supp. 2d 42. The second case found that the appellant-plaintiff's claim, which alleged that an

"unidentified DOJ employee willfully or intentionally disclosed" confidential protected

information, could proceed under the Privacy Act. *Convertino*, 684 F.3d at 102. Once more, the

*Convertino* Court's focus on the conduct of individual employees, rather than agencies writ large,

is the opposite of what Defendant has stated. *See generally* Def. Mot. at 10-13.

In the same vein, Defendant argues that *Albright,* 732 F.2d at 189, and *Sussman v. U.S.

Marshals Serv.*, 494 F.3d 1106, 1121–23 (D.C. Cir. 2007), illustrate that "agency willfulness

cannot be attributed to an employee's unauthorized frolic." Def. Mot. at 12 (internal quotation

marks omitted). Neither *Albright* nor *Sussman* says anything remotely like this. In *Albright,* the Court merely observed that "the 'intentional or willful' action requirement" of the Privacy Act references "only to the intentional or willful failure of the agency to abide by the Act, and not to all voluntary actions which might otherwise inadvertently contravene one of the Act's strictures." 732 F.2d at 189. The Court said nothing at all about the Defendant's distinction between an agency and its employees, a distinction which appears nowhere in the text of the Privacy Act itself. *See generally* 5 U.S.C. § 552a. And similarly, *Sussman* held that "in order to recover," a Privacy Act plaintiff must show an agency improperly disclosed materials located in records retrievable by the plaintiff's own name, "as opposed to someone else's name." 494 F.3d at 1123. There is no discussion in *Sussman* of the Defendant's distinction between an agency and its employees, a distinction which, if carried to its logical conclusion, would create an exception swallowing the rule of the Privacy Act whole.

Finally, Defendant states that in *Blanton v. Dep't of Just.*, No. 82-0452, 1984 U.S. Dist. LEXIS 24925 (D.D.C. Feb. 17, 1984), the Court held that "an unauthorized leak by an agency employee, undertaken without supervisory direction and contrary to agency policy, did not constitute intentional or willful conduct by the agency within the meaning of § 552a(g)(4)." Def. Mot. at 11-12 (internal quotation marks omitted). That is simply not what happened in *Blanton.* In fact, the *Blanton* Court determined the opposite: that the plaintiff had provided no evidence of a leak in violation of the Privacy Act, not that there was such a leak and that the leak did not constitute willful or intentional conduct under the Privacy Act. 1984 U.S. Dist. LEXIS 24925 at *7-*9. It is worth quoting the *Blanton* Court at length to plumb the depths of the Defendant's error:

> Plaintiff alleges that the DOJ "leaked information contained in the 'Rowe Report.'" The exhibits appended to the complaint and the Plaintiff's Opposition to Summary Judgment fail to convince the Court that there was any willful and intentional act which gave

> information to the public causing damages to the plaintiff. The affidavit in support of Defendant's Motion for Summary Judgment, submitted by Michael Shaheen, states that no DOJ employee was authorized to disclose the "Rowe Report" to anyone outside the DOJ. Affidavit of Michael Shaheen. *This statement is not contradicted by the plaintiff*…
>
> The affidavit by Michael Shaheen states that in his position as DOJ's Counsel on Professional Responsibility he had personal knowledge that "dissemination of the 'Rowe Report' was limited to certain components of the DOJ and no DOJ employee was authorized to disclose the 'Rowe Report' to anyone outside the DOJ."
>
> This affidavit together with the disclosure of the "Rowe Report" pursuant to *Playboy Enterprises, Inc. v. Department of Justice, et al.,* 219 U.S. App. D.C. 343, 677 F.2d 931 (D.C. Cir. 1982) is sufficient to allow the plaintiff to substantiate either the allegation of a "leak" by the DOJ or that there remains a genuine issue of fact in dispute. *The plaintiff has not submitted affidavits to support the allegations made in his complaint nor in support of his Opposition for Summary Judgment. There is no factual basis for the allegations that DOJ acted in a manner which was intentional or willful in disclosure of the "Rowe Report"* and that such an action caused actual damages to the plaintiff.

*Id.* (emphasis added). Nowhere in *Blanton* did the Court articulate the rule that "an unauthorized leak by an agency employee, undertaken without supervisory direction and contrary to agency policy, [does] not constitute intentional or willful conduct by the agency within the meaning of" the Privacy Act, as Defendant erroneously claims. Def. Mot. at 11-12 (internal quotation marks omitted); *see generally* 1984 U.S. Dist. LEXIS 24925.

Two cases in this Circuit, decided roughly four decades apart, serve as useful examples to demonstrate just how wrong it is that Defendant would focus on the inchoate and chimerical intentions of an agency, rather than the concrete, well-articulated actions and beliefs of individuals employed by the agency. In *Laningham v. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987), an attorney for the United States Navy, which had disclosed the plaintiff's documents, submitted a declaration indicating that he believed such disclosure to be lawful. The *Laningham* Court counted this

14

declaration as a point in the Navy's favor when determining that the disclosure had not been willful and intentional within the meaning of the Privacy Act. *See Laningham,* 813 F.2d at 1239, 1243-1244. The attorney's declaration was only one factor in the *Laningham* Court's analysis – and it was probably not even a particularly important factor. But it nonetheless illustrates that when assessing willful and intentional conduct within the meaning of the Privacy Act, courts in this Circuit do indeed consider and weigh the motivations of individuals who are acting on behalf of government agencies when analyzing the willful and intentional requirement.

In *Lombrano v. Secretary of the Air Force,* 2022 WL 392308 (D.D.C. February 9, 2022), this Court also reviewed the actions of an individual, not an agency, when determining that the plaintiff had plausibly alleged willful and intentional conduct sufficient to survive a motion to dismiss. That case involved the disclosure of the plaintiff's medical information by a treating physician. *Lombrano,* 2022 WL 392308 at *1. Fatally for the Defendant's argument, this Court looked to the actions of the disclosing "person" to determine whether the "agency" had acted "willfully and intentionally." *Lombrano,* 2022 WL 392308 at *3, *favorably citing Feldman v. CIA*, 797 F. Supp. 2d 29 (D.D.C. 2011).

As *Laningham*, *Lombrano,* and many other cases in this Circuit's history demonstrate, when assessing whether an agency has acted willfully or intentionally for the purposes of the Privacy Act, it is the actual behavior of the agency employees at issue – not the lofty, detached policy directives of the agency as a whole – which matters. *Laningham,* 813 F.2d at 1239, 1243-1244; *Lombrano,* 2022 WL 392308 at *3. All authorities which the Defendant claims show otherwise are, as this memorandum has demonstrated, not on point. *See supra; see also* Def. Mot. at 10-14. Turning back to the behavior of the agency employee in this case, Defendant admits that Staff Sergeant Dines' conduct contravened Army policy, which means Defendant has effectively

conceded Staff Sergeant Dines' conduct was willful and intentional under the Privacy Act. Def. Mot. at 10. This Court should take Defendant at its word.

But even, *assuming arguendo,* Defendant is correct – even if the actions of the agency, and not an individual employee, are what matter under the Privacy Act – Defendant still cannot prevail. Accepting "as true all factual allegations contained in" Mr. Winters' Complaint, *Wright*, 503 F. Supp. 2d at 170, and granting Mr. Winters "the benefit of all inferences that can be derived from the facts alleged," *Am. Nat'l Ins. Co.*, 642 F.3d at 1139, the Complaint clearly states that Staff Sergeant Dines obtained Mr. Winters' OMPF by making a request for it – meaning that someone else in the Department of the Army approved the request, then gave Staff Sergeant Dines access to Mr. Winters' OMPF. *See* Compl. at ¶ 33 (alleging that Staff Sergeant Dines went "through the proper channels to get those records (i.e., Mr. Winters' OMPF); That means he submitted a request"). Defendant has already admitted that such a disclosure would be improper under Army Reg. 25-22, para. 5-2. *See* Def. Mot. at 10. This means that the agency itself did, in fact, act willfully and intentionally within the meaning of the Privacy Act, even under Defendant's inaccurate understanding of that statutory term.

For all these reasons, the Defendant willfully and intentionally disclosed Mr. Winters' records.

## II.     The Complaint Establishes a Disclosure From a "System of Records."

A Privacy Act plaintiff must also show that the disclosed information is a record within a system of records. *See Doe v. DOJ*, 660 F. Supp. 2d at 44–45. Under the Privacy Act, a "system of records" is "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5).

The D.C. Circuit has defined two criteria for information to be a "record" within the

16

meaning of the Privacy Act: 1) "the information must be 'about' an individual," and 2) "the information must contain the individual's name or identifying particular." *Tobey v. NLRB,* 40 F.3d 469, 471 (D.C. Cir. 1994). The Privacy Act "only covers disclosures of information which was either directly or indirectly retrieved from a system of records." *Cloonan v. Holder*, 768 F. Supp. 2d 154, 164 (D.D.C. 2011), *quoting Doe v. U.S. Dep't of Treasury*, 706 F. Supp. 2d 1, 6 (D.D.C. 2009). Retrieval of a protected record may, however, be inferred by circumstantial evidence. *See Doe v. U.S. Postal Service,* 317 F.3d 339, 342, 343 (D.C. Cir. 2003).

Here, Mr. Winters has established in his Complaint that protected records – documents from his OMPF – were disclosed from a system of records. During her June 24, 2024, testimony, Ms. Pasewicz made clear that Staff Sergeant Dines had obtained documents from Mr. Winters' OMPF by submitting a request for those records. *See, e.g.,* Compl. at ¶ 33 (detailing Ms. Pasewicz's testimony that Staff Sergeant Dines went "through the proper channels to get those records [i.e., Mr. Winters' OMPF]. That means he submitted a request"). The language of Mr. Winters' Complaint thus clearly states that Staff Sergeant Dines accessed Mr. Winters' OMPF from "a group of any records…from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5).

Defendant argues that the Complaint merely "speculates that a head-and-shoulders image came from Plaintiff's [OMPF] but pleads no facts that anyone queried Plaintiff's name or personal identifiers in a "system of records notice"-covered personnel system." Def. Mot. at 14. But the photograph referenced by the Defendant here is not the only document which Mr. Winters alleged was disclosed to Ms. Pasewicz. Indeed, the Complaint states that other records from the OMPF were so disclosed: "Ms. Pasewicz revealed that she possessed *documents*, *including* an official

17

photo…maintained by the Defendant in Mr. Winters' [OMPF]". Compl. at ¶24; *see also* Compl. at ¶¶29, 37. And the Complaint does plead that someone queried Mr. Winters' name or personal identifiers in a system of records notice-covered personnel system: namely, Staff Sergeant Dines. *See, e.g.,* Compl. at ¶¶ 29-30, 32-33.

True, the Complaint is sketchy on the details of how exactly Staff Sergeant Dines accomplished this, and whether he did it on his own or had help. *See* Compl., at ¶ 33. But Mr. Winters can "hardly be expected to know the full details behind an improper disclosure prior to discovery, since those details are most likely to be under the control of the defendant." *Feldman*, 797 F. Supp. 2d at 41.[2] Mr. Winters "will need to amass sufficient evidence to meet [his] burden of proof as the case proceeds," but he "need not do so at the pleading stage." *Kelley v. FBI*, 67 F. Supp. 3d 240, 265 (D.D.C. 2014).

Accepting "as true all factual allegations contained in" Mr. Winters' Complaint, *Wright*, 503 F. Supp. 2d at 170, and granting Mr. Winters "the benefit of all inferences that can be derived from the facts alleged," *Am. Nat'l Ins. Co.*, 642 F.3d at 1139, Mr. Winters has pled a disclosure from a system of records.

### III.  Mr. Winters' Complaint Establishes a Disclosure with Attendant "Actual Damages."

---

[2] For this reason, Defendant's argument that Mr. Winters has not shown that his OMPF was accessed by Staff Sergeant Dines simply because the photograph came from a Public Affairs Office ("PAO") server also fails. Def. Mot. at 14. Even if such a PAO server does not satisfy 5 U.S.C. § 552a(a)(5)'s "group of records" requirement – something that is far from clear, and which, in any case, Defendant did not establish in its motion – Defendant has not shown that, based purely on the facts pled in the Complaint, the photograph was accessed from a PAO server. Def. Mot. at 14. While Defendant is correct that Mr. Winters stated he believed it had come from a PAO server during the June 24, 2024, hearing, this was speculation. Compl. Exhibit 1 at 331. And in any case, the photograph could still have been accessed from Mr. Winters' OMPF by Staff Sergeant Dines even if it originally came from a PAO server, whether because the photograph originated in a PAO server and was then added to the OMPF, or because the photograph originated in the OMPF and was then duplicated on a PAO server. Discovery depositions will determine the answer to these and other questions.

5 U.S.C. § 552a(g)(1)(D) provides a remedy if the agency "fails to comply with any other provision of [the Privacy Act] . . . in such a way as to have an adverse effect on an individual," including by improperly disclosing records in violation of 5 U.S.C. § 552a(b). *See, e.g., Ashbourne v. Hansberry*, No. 12-CV-1153, 2015 WL 11303198, at *9-10 (D.D.C. Nov. 24, 2015), *aff'd*, 703 F. App'x 3 (D.C. Cir. 2017); *Doe v. DOJ,* 660 F. Supp. 2d at 44–45. This requires the plaintiff to show "actual damages" connected to the adverse effect to "qualify" under the Act. *Doe v. Chao*, 540 U.S. 614, 620–27 (2004). A plaintiff must therefore establish not only that he "was adversely affected by the improper disclosure, but also that [he] suffered 'some harm for which damages can reasonably be assessed.'" *Mulhern v. Gates*, 525 F.Supp.2d 174, 181–82 (D.D.C.2007), *quoting Doe v. Chao*, 540 U.S. at 621. *See also FAA v. Cooper,* 566 U.S. 284, 298 (2012) (holding that actual damages in the Privacy Act means "special damages for proven pecuniary loss.")

Here, Mr. Winters has pled "proven pecuniary loss" sufficient for a Privacy Act claim. *See Cooper,* 566 U.S. at 298. In his Complaint, Mr. Winters stated that, because of the actions of Defendant, he was required "to seek further mental health care and counseling, costing him thousands of dollars to this point and necessitating further care for as yet unknown but certainly substantial period of time…The intentional, willful, and unlawful dissemination of Mr. Winters' OMPF by Staff Sergeant Dines," the Complaint goes on, has "caused Mr. Winters significant pecuniary loss. Among other things, Mr. Winters has had to seek out mental health counseling because of the wrongful disclosure." Compl. at ¶¶55, 61; *see Cooper,* 566 U.S. at 298.

Without disputing these allegations, the Defendant devotes much time to sketching out its alternative explanation for Mr. Winters' mental health care and counseling: his "pre-existing mental health issues" and the previous "physical violence, verbal abuse, and psychological torment" of Ms. Pasewicz. Def. Mot. at 16; *see generally* Def. Mot. at 14-18. Throughout,

Defendant seems to assert that only if Mr. Winters can show that the disclosure of his OMPF by Staff Sergeant Dines was the exclusive, or primary, factor leading to his damages is recovery permitted under the Privacy Act. *See* Def. Mot. at 17 (arguing that when "intervening, private-party conduct and unrelated personal disputes predominate the narrative" together with "pre-existing mental health issues and significant life stressors, the pleading must do more than make a generic assertion that mental health care expenses were incurred due to the disclosure at issue when there is another potential, and more probable, cause") (internal citations omitted).

That is not the law. The disclosure of information by an agency is not required to be the primary or exclusive cause of a plaintiff's adverse impacts; the plaintiff must only show that the agency's "conduct was a *substantial* factor in the sequence of events leading to" the harms he suffered, and that those harms were "reasonably foreseeable or anticipated as a natural consequence" of the agency's conduct. *In re U.S. Office of Personnel Management Data Security Breach Litigation*, 928 F.3d 42, 67 (D.C. Cir. 2019) (emphasis added) (internal citations omitted).

Mr. Winters has satisfied this standard. Accepting "as true all factual allegations contained in" Mr. Winters' complaint, *Wright*, 503 F. Supp. 2d at 170, and granting Mr. Winters "the benefit of all inferences that can be derived from the facts alleged," *Am. Nat'l Ins. Co.*, 642 F.3d at 1139, Mr. Winters has pled that the disclosure of his OMPF by Staff Sergeant Dines was indeed a "substantial factor in the sequence of events leading to" the harms he suffered, and that those harms were "reasonably foreseeable or anticipated as a natural consequence" of Staff Sergeant Dines' violation of the Privacy Act. *In re U.S. Office of Personnel Management Data Security Breach Litigation*, 928 F.3d at 67.

Defendant's argument actually supports Mr. Winters' position: it is precisely because of Mr. Winters' pre-existing mental health issues and history of abuse at the hands of Ms. Pasewicz

that Mr. Winters found the disclosure of his OMPF to her by the Army, an institution to which he had given years of service and which he believed would prove worthy of his trust, so mentally devastating. Defendant also deliberately minimizes the effect which disclosure of documents from his OMPF had upon Mr. Winters. By disclosing this document, Staff Sergeant Dines gave Ms. Pasewicz the evidence she believed she needed to make false allegations regarding Mr. Winters in open court, advancing her efforts to break him mentally no matter the cost. *See* Compl. at ¶¶ 24-31, 34, 35, 42. Much of Ms. Pasewicz's public heinous behavior directed at Mr. Winters only occurred after she obtained Mr. Winters' OMPF from Staff Sergeant Dines, the contents of which, in Ms. Pasewicz's mind, confirmed her belief that Mr. Winters had lied about his Army service and resulted in her escalating her vitriol against him. It was only following the disclosure of Mr. Winters' OMPF, after all, that Ms. Pasewicz told Mr. Winters over text, "Come on, pussy. I'm not done. Let's see that anxiety come," accused Mr. Winters of committing "stolen valor", called Mr. Winters a "faggot," and expressed hope that his children "would die in front of [him]." *Id*., at ¶¶ 28, 31, 39.

The disclosure of Mr. Winters' OMPF to Ms. Pasewicz was therefore clearly a "substantial factor in the sequence of events leading to" Mr. Winters seeking further mental health counseling. *See In re U.S. Office of Personnel Management Data Security Breach Litigation*, 928 F.3d at 67; Compl. at ¶¶55, 61. Moreover, it is certainly "foreseeable" that disclosing a person's protected record to their archnemesis would cause that person further trauma, embarrassment, and mental anguish, causing the person to seek mental health treatment, as Mr. Winters did. *See In re U.S. Office of Personnel Management Data Security Breach Litigation*, 928 F.3d at 67; Compl. at ¶¶55, 61.

The Defendant has advanced an alternative explanation for Mr. Winters' mental health

21

counseling: that it would have happened regardless of anything Staff Sergeant Dines did, purely because of Mr. Winters' previous mental health issues and Ms. Pasewicz's appalling behavior. *See generally* Def. Mot. at 14-18. But a complaint "survives a motion to dismiss even [i]f there are two alternative explanations, one advanced by [the] defendant and the other advanced by [the] plaintiff, both of which are plausible." *VoteVets Action Fund v. U.S. Dep't of Veterans Affs.*, 992 F.3d 1097, 1104 (D.C. Cir. 2021), *quoting Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (internal quotation marks omitted). Time – to say nothing of discovery and trial – will tell which explanation of events is correct. Until then, Defendant has not shown that Mr. Winters' version of events is so implausible as to merit dismissal under Rule 12(b)(1) or 12(b)(6).

## <u>CONCLUSION</u>

For the reasons given above, Defendant's motion to dismiss should be denied. A proposed order is attached.

Dated December 16, 2025.                    Respectfully submitted,

<u>/s/David P. Sheldon</u>

David P. Sheldon
DC Bar No. 446039
Law Offices of David P. Sheldon, P.L.L.C.
100 M Street, S.E., Suite 600
Washington, DC  20003
Tel: 202.546.9575
Fax: 202.546.0135

*Attorney for Plaintiff*

22