UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GARY W. WINTERS,

       Plaintiff,

   v.

DEPARTMENT OF THE ARMY,

       Defendant.

Civil Action No. 25-1314 (LLA)

**REPLY TO OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT
<u>AND MEMORANDUM IN SUPPORT THEREOF</u>**

**TABLE OF CONTENTS**

Table of Contents ............................................................................................................... i

Table of Authorities ......................................................................................................... iii

Introduction ....................................................................................................................... 1

Argument ........................................................................................................................... 1

I.     Plaintiff Still Fails to Plead "Actual Damages" (and Causation) ........................... 1

II.    Plaintiff Still Fails to Plead "Intentional or Willful" Agency Conduct Under 5 U.S.C. § 552a(g)(4) ................................................................................................. 4

    A.    "Intentional or willful" is a term of art focused on agency noncompliance—not strict liability for any employee wrongdoing. .......... 4

    B.    This Circuit's cases underscore that an unauthorized "leak" by a rogue employee does not establish intentional or willful agency conduct under the Privacy Act ...................................................................................... 5

    C.    Absent Notice, Authorization, or Ratification, Plaintiff Cannot Plead Willful Agency Conduct .............................................................................. 7

    D.    Plaintiff's "patently egregious" framing targets the alleged bad act, not the required agency culpability ........................................................... 8

    E.    Plaintiff's "proper channels" inference is implausible and contradicts the Complaint's "unlawful dissemination" framing ......................................... 9

    F.    Plaintiff's reliance on *Laningham* and *Lombrano* is misplaced ............... 10

III.    Plaintiff Still Fails to Plead a "System of Records" Disclosure Because He Does Not Plausibly Allege Retrieval by Identifier ....................................................... 12

    A.    Plaintiff's sworn testimony is that the image came from a Public Affairs photo repository, not his Official Military Personnel File ........................ 12

    B.    Plaintiff's claim that "other records" were disclosed is even more speculative .................................................................................................. 14

Conclusion ...................................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*Albright v. United States,*
732 F.2d 181 (D.C. Cir. 1984) ................................................................... 5, 6, 9

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ....................................................................... 2, 3, 10, 14

*Auto Parts Network, Inc. v. Parts Geek, LLC,*
692 F.3d 1009 (9th Cir. 2012) .................................................................... 11

*Ayissi-Etoh v. Fannie Mae,*
712 F.3d 572 (D.C. Cir. 2013) ..................................................................... 8

*Banneker Ventures, LLC v. Graham,*
798 F.3d 1119 (D.C. Cir. 2015) .................................................................... 4

*Bartel v. FAA,*
725 F.2d 1403 (D.C. Cir. 1984) ................................................................... 7

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................................ 3, 4, 10

*Convertino v. Dep't of Just.,*
684 F.3d 93 (D.C. Cir. 2012) .................................................................... 6, 7

*Convertino v. Dep't of Just.,*
769 F. Supp. 2d 139 (D.D.C. 2011) ........................................................ 5, 6, 11

*Convertino v. Dep't of Just.,*
393 F. Supp. 2d 42 (D.D.C. 2005) ............................................................... 5

*Curry v. District of Columbia,*
195 F.3d 654 (D.C. Cir. 1999) ..................................................................... 8

*FAA v. Cooper,*
566 U.S. 284 (2012) ................................................................................ 4

*Faragher v. City of Boca Raton,*
524 U.S. 775 (1998) ................................................................................ 8

*Fitzpatrick v. IRS,*
665 F.2d 327 (11th Cir. 1982) .................................................................... 7

*Gary v. Long,*
59 F.3d 1391 (D.C. Cir. 1995) ..................................................................... 8

*Gause v. Department of Defense*

676 F. App'x 316 (5th Cir. 2017) ............................................................................................ 3

*Gersman v. Grp. Health Ass'n*,
  975 F.2d 886 (D.C. Cir. 1992) ............................................................................................ 7

*Henthorn v. Dep't of Navy*,
  29 F.3d 682 (D.C. Cir. 1994) ............................................................................................ 3

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42 *(*D.C. Cir. 2019*)*
  ...................................................................................................................................... 2

*Kowal v. MCI Commc'ns Corp.*,
  16 F.3d 1271 (D.C. Cir. 1994) .......................................................................................... 10

*Lane v. Pena*,
  518 U.S. 187 (1996) .......................................................................................................... 4

*Laningham v. Navy*,
  813 F.2d 1236 (D.C. Cir. 1987) ........................................................................................ 11

*Lombrano v. Dep't of the Air Force.*,
  No. 21-cv-872 (DLF), 2022 U.S. Dist. LEXIS 23403 (D.D.C. Feb. 9, 2022) ...................... 11

*Maydak v. United States*,
  630 F.3d 166 (2010) .......................................................................................................... 9

*Meritor Sav. Bank, F.S.B. v. Vinson*,
  477 U.S. 57 (1986) ............................................................................................................ 7

*Mullane v. Dep't of Just.*,
  Civil Action No. 22-725 (RBW), 2024 U.S. Dist. LEXIS 120713 (D.D.C. July 10, 2024)
  ...................................................................................................................................... 12, 13

*Randall v. NASA*,
  14 F.3d 1143 (6th Cir. 1994) ............................................................................................ 7

*Statewide Bonding, Inc. v. Dep't of Homeland Sec.*,
  980 F.3d 109 (D.C. Cir. 2020) .......................................................................................... 3, 4

*TD Bank N.A. v. Hill*,
  928 F.3d 259 (3d Cir. 2019) ............................................................................................ 11

*Tijerina v. Walters*,
  821 F.2d 789 (D.C. Cir. 1987) .......................................................................................... 7

*Votevets Action Fund v. McDonough*,
  992 F.3d 1097 (D.C. Cir. 2021) ........................................................................................ 4

*White v. Off. of Pers. Mgmt.*,
  840 F.2d 85 (D.C. Cir. 1988) ............................................................................................ 5, 6, 9

*Wilborn v. Dep't of Health & Hum. Servs.*,
    49 F.3d 597 (9th Cir. 1995) ........................................................................................ 7

*York v. McHugh*,
    850 F. Supp. 2d 305 (D.D.C. 2012) ........................................................................... 13

**Statutes**

5 U.S.C. § 552a ................................................................ 1, 4, 6, 8, 9, 10, 13, 14, 15

**Other**

*Restatement (Second) of Agency*
    § 228 ............................................................................................................................ 11

**INTRODUCTION**

Plaintiff's Complaint is heavy on drama and light on the facts that matter under the Privacy Act's damages framework. It tells a detailed story about a toxic relationship, domestic-violence litigation, and personal betrayal, but it does not do the work the statute demands. It does not plausibly connect any alleged Privacy Act violation to the specific "actual damages" Plaintiff seeks, it does not plead a coherent theory of agency-level culpability, and it does not clearly allege that any disclosure came from an identifier-retrieved "system of records." Instead of concrete allegations that bridge those elements, the pleading relies on conclusions—"due to," "proper channels," "submitted a request"—and leaves the Court to infer the essential mechanics.

Those omissions are dispositive at the pleading stage. On damages, the Complaint claims "thousands of dollars" in counseling expenses but never explains how the alleged disclosure was a substantial factor leading to those costs as opposed to the numerous independent stressors the Complaint itself describes. On willfulness, it treats an unauthorized act by a single soldier as enough to impose damages liability on the Department, without facts showing agency authorization, notice, ratification, or any other basis to attribute the alleged misconduct to the agency's own culpable noncompliance. And on the "system of records" element, it gestures at an Official Military Personnel File while remaining vague about what was actually retrieved, from where, and by what identifier—leaving the core statutory requirement to guesswork rather than well-pleaded facts.

**ARGUMENT**

**I.      Plaintiff Still Fails to Plead "Actual Damages" (and Causation)**

The most glaring deficiency in Plaintiff's Complaint is its failure to plausibly plead that his claimed pecuniary loss was sustained "as a result of" the alleged Privacy Act violation, which is a proximate-causation inquiry. 5 U.S.C. § 552a(g)(4)(A). Plaintiff asserts that the Army's motion

demands proof that the alleged disclosure was the "exclusive, or primary" cause of his counseling expenses. Pl.'s Opp'n to Def.'s Mot. to Dismiss (ECF No. 9) at 20. This is mistaken.

Defendant agrees with Plaintiff's articulation that the disclosure need not be the sole cause of a plaintiff's injury, and that causation can be satisfied where the agency's conduct was a substantial factor in the chain of events and the resulting harms were reasonably foreseeable. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 67 (D.C. Cir. 2019). However, Plaintiff's pleading does not establish this.

At the motion-to-dismiss stage, the complaint must contain sufficient factual matter to permit a reasonable inference that the alleged violation was a substantial factor leading to the specific "actual damages" claimed, not merely a "sheer possibility" untethered to pleaded facts connecting the disclosure to the asserted expenditure. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Army's motion simply applied that settled framework and explained why a conclusory allegation that Plaintiff incurred "thousands of dollars" in counseling "due to" the disclosure does not plausibly plead causation where the complaint itself pleads other, more probable stressors and preexisting issues. Def.'s Mot. to Dismiss (ECF No. 8) at 15; Compl. (ECF No. 2) ¶¶ 41, 49, 55.

The complaint alleges that Plaintiff's distress arose in the context of an intensely dysfunctional relationship and ensuing domestic-violence litigation, including severe alleged physical violence and threats wholly apart from any personnel-record disclosure. Compl. (ECF No. 2) ¶¶ 19–21; Compl. (ECF No. 2) Ex. 1 at 68–70. While Defendant is certainly mindful and sympathetic of the hardship Plaintiff faced, the complaint also alleges preexisting mental-health vulnerability, including prior suicidal thoughts disclosed to Ms. Pasewicz, independent of any alleged Army action. Compl. (ECF No. 2) ¶ 41. Yet the complaint's damages allegation does not plead facts explaining how the alleged disclosure of a single head-and-shoulders photograph of

Plaintiff in uniform was a substantial factor leading to the claimed counseling expenditures, as opposed to the extensive private conduct and stressors Plaintiff himself pleads. Compl. (ECF No. 2) ¶ 55; Def.'s Mot. to Dismiss (ECF No. 8) at 15–16.

The law is clear that this inferential gap must be bridged by something in the Complaint. For example, in *Gause v. Dep't of Defense*, the Fifth Circuit noted that, while the plaintiff in that case did mention "lost or jeopardized present or future financial opportunities," he did not state "what those opportunities are or how the disclosure of his records has caused their loss." 676 F. App'x 316, 318 (5th Cir. 2017) ("A plaintiff cannot survive a motion to dismiss based on 'labels and conclusions' or 'naked assertions' that are devoid of 'further factual enhancement.'").

Plaintiff's opposition attempts to supply a new causal narrative: that his preexisting vulnerabilities and "trust" in the Army made the disclosure uniquely devastating, and that the alleged disclosure supposedly emboldened Ms. Pasewicz to escalate her abuse and courtroom accusations. Pl.'s Opp'n to Def.'s Mot. to Dismiss (ECF No. 9) at 21. This fails to bridge the gap for two reasons. First, that post hoc theory cannot salvage a complaint that did not plead those linking facts in the first place. *Statewide Bonding, Inc. v. Dep't of Homeland Sec.*, 980 F.3d 109, 117 n.5 (D.C. Cir. 2020) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."); *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994). This is especially so where the missing causation details concern Plaintiff's own decision to seek treatment and why he incurred specific expenses—matters uniquely within Plaintiff's knowledge when he filed and not something "discovery will determine" for him after the fact. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 559 (2007); *Iqbal*, 556 U.S. at 678. Second, Plaintiff still does not claim that this loss of trust in the Army or any "escalations" in Ms. Pasewicz's actions were in fact addressed in his mental health treatment.

Finally, Plaintiff's reliance on the "two plausible explanations" formulation from *Votevets Action Fund v. McDonough*, 992 F.3d 1097, 1104 (D.C. Cir. 2021) and *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) does not excuse the absence of pleaded causation facts. Pl.'s Opp'n to Def.'s Mot. to Dismiss (ECF No. 9) at 22. Those cases still require that the plaintiff's explanation be plausibly pleaded in the complaint itself, not assembled for the first time in opposition briefing to avoid dismissal. *Statewide Bonding*, 980 F.3d at 117 n.5; *Twombly*, 550 U.S. at 570.

## II.    Plaintiff Still Fails to Plead "Intentional or Willful" Agency Conduct

The Privacy Act's damages remedy is a limited waiver of sovereign immunity that runs against the agency, and it is available only where the plaintiff pleads and ultimately proves that the agency acted in an "intentional or willful" manner and that the violation caused "actual damages." 5 U.S.C. § 552a(g)(1)(D); 5 U.S.C. § 552a(g)(4). The Supreme Court has repeatedly emphasized that waivers of sovereign immunity must be strictly construed and that courts may not "enlarge" a damages remedy beyond the terms Congress enacted. *FAA v. Cooper*, 566 U.S. 284, 290–91 (2012); *Lane v. Pena*, 518 U.S. 187, 192 (1996). Despite this, Plaintiff's opposition effectively treats the Department of the Army as strictly liable whenever a soldier allegedly misuses access to personnel records, untethered to well-pleaded facts showing the Department's own culpable noncompliance with the Act's demanding standard. Pl.'s Opp'n to Def.'s Mot. to Dismiss (ECF No. 9) at 9–16. This is not the law.

### A.    "Intentional or willful" is a term of art focused on agency noncompliance— not strict liability for any employee wrongdoing.

Consistent with that narrow damages waiver, "intentional or willful" is a term of art and is not satisfied merely because the challenged conduct of an employee was deliberate rather than inadvertent; the plaintiff must plead facts showing the agency itself acted "without grounds for

believing [its conduct] lawful" or in "flagrant[] disregard[]" of Privacy Act rights. *White v. Off. of Pers. Mgmt.*, 840 F.2d 85, 87–88 (D.C. Cir. 1988). The D.C. Circuit has made clear that not "every affirmative or negligent action" that contravenes the Act supports damages liability. *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984). The requirement therefore is not whether an intentional or willful act occurred generally, but rather whether there was an "intentional or willful failure of the agency to abide by the Act." *Albright*, 732 F.2d at 189.

### B.   This Circuit's cases underscore that an unauthorized "leak" by a rogue employee does not establish intentional or willful agency conduct under the Privacy Act.

In *Convertino v. Department of Justice*, the district court granted the Department of Justice summary judgment and denied Convertino's request to stay under then-Rule 56(f) to pursue additional third-party discovery aimed at identifying the leaker, reasoning that further delay would likely be futile given years of unsuccessful efforts. 769 F. Supp. 2d 139, 155–56 (D.D.C. 2011).[1] There, the court rejected precisely the move Plaintiff attempts here: treating an alleged unauthorized disclosure (even by someone with access) as a sufficient basis to attribute intentional-or-willful conduct to the agency. *Convertino*, 769 F. Supp. 2d at 148–50, *rev'd on other grounds*, 684 F.3d 93 (D.C. Cir. 2012). The court emphasized that to recover damages, the plaintiff must do

---

[1]   Plaintiff is correct that the Motion cited the wrong *Convertino* decision and Defendant regrets this inadvertent error. As noted above, the pertinent district court merits ruling on the Privacy Act disclosure claim is *Convertino v. Dep't of Just.*, 769 F. Supp. 2d 139 (D.D.C. 2011), not *Convertino v. Dep't of Justice*, 393 F. Supp. 2d 42 (D.D.C. 2005). Convertino's district court litigation began as a multi-claim suit against the Department of Justice and officials arising out of press disclosures about a Department internal professional-responsibility investigation; in 2005, the district court granted a partial motion to dismiss, holding (among other things) that the Civil Service Reform Act's remedial scheme foreclosed Convertino's non-Privacy-Act theories and leaving only a Privacy Act wrongful-disclosure claim against the Department. *Convertino*, 393 F. Supp. 2d at 44–47.

more than prove opportunity and motive; he must prove that a particular agency actor made the disclosure and did so in a manner that can be attributed to the agency under the Act's stringent standard. *Id* at 146–50. *Convertino* squarely links Privacy Act agency liability to traditional attribution limits, stating:

> In order for an agency to be liable for a Privacy Act violation allegedly committed by one of its employees, the responsible agency employee must have been acting within the scope of his or her employment.

*Id.* at 147.

Indeed, that the point is doctrinally necessary because the Privacy Act does not impose strict liability on agencies for any employee misbehavior involving access to records. *Albright*, 732 F.2d at 189. Damages require proof of an intentional-or-willful agency violation, not merely proof of access plus wrongdoing. 5 U.S.C. § 552a(g)(4); *White*, 840 F.2d at 87.

On appeal, the D.C. Circuit reversed the district court's judgment (that further discovery to determine the leaker's identity was not warranted) but began by recognizing the district court's threshold point—it is "undisputed" that, absent the identity of the person who allegedly disclosed the information, a Privacy Act plaintiff cannot survive summary judgment on a damages claim. 684 F.3d 93, 99 (D.C. Cir. 2012).

> It is undisputed that Convertino currently lacks the evidence necessary to survive summary judgment on his Privacy Act claim. To state a claim for relief under the Privacy Act, a plaintiff must establish that (1) the agency violated a provision of the Act, (2) the violation was intentional or willful, and (3) the violation had an adverse effect on the plaintiff. Because Convertino does not know the identity of the individual(s) who disclosed information regarding the [Office of Professional Responsibility] referral, he cannot show that the disclosure was "intentional or willful."

*Id.* (cleaned up).

Thus, the D.C. Circuit is clear that, without pinning down who acted, the court cannot evaluate whether the alleged disclosure was the kind of intentional, agency-attributable conduct

- 6 -

that triggers the Privacy Act's narrow damages remedy. *Id*. Importantly, *Convertino*'s statements tying liability to the leaker's identity are part of the holding, not dicta. A proposition is dicta if it is "not determinative of the result." *Gersman v. Grp. Health Ass'n*, 975 F.2d 886, 897 (D.C. Cir. 1992). The panel's Rule 56(f) inquiry required the Court to decide whether the "particular facts" sought through discovery were "necessary to the litigation." *Convertino*, 684 F.3d at 99–100. In other words, the Court's conclusion depended on the premise that source identity is an essential evidentiary gateway to proving the Privacy Act's willfulness element in that case—making it "determinative of the result." *Gersman*, 975 F.2d at 897; *Convertino*, 684 F.3d at 99–102.

### C.    Absent Notice, Authorization, or Ratification, Plaintiff Cannot Plead Willful Agency Conduct

Given that the Privacy Act's damages remedy turns on agency-level culpability, this (and other) Circuit's Privacy Act decisions implicitly recognize that agency-level culpability requires a certain status of the discloser or ratification by the agency. *See Wilborn v. Dep't of Health & Hum. Servs.*, 49 F.3d 597, 602 (9th Cir. 1995) (the fact that discloser was the Hearing Office Chief Administrative Law Judge—"the highest ranking agency official" at that office supports an "intentional or willful" finding); *Tijerina v. Walters*, 821 F.2d 789, 792 (D.C. Cir. 1987) (discloser was the Deputy Inspector General); *Bartel v. FAA*, 725 F.2d 1403, 1405 (D.C. Cir. 1984) (discloser was the Chief of the FAA Eastern Region Flight Standards Division); *Fitzpatrick v. IRS*, 665 F.2d 327, 328 (11th Cir. 1982) (disclosure was by plaintiff's supervisor); *Randall v. NASA*, 14 F.3d 1143 (6th Cir. 1994) (disclosure was directed by division chief).

One administrable way the law draws that attribution line for misconduct by non-supervisory employees—when the entity itself did not direct the misconduct—is the familiar notice-to-management framework in Title VII coworker-harassment cases. *Meritor Sav. Bank, F.S.B. v. Vinson*, 477 U.S. 57, 72 (1986). Under that rule, an employer is generally liable for a

coworker's harassment only if it knew or should have known of the misconduct and failed to take prompt and appropriate corrective action. *Faragher v. City of Boca Raton*, 524 U.S. 775, 799–801 (1998); *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013); *Curry v. District of Columbia*, 195 F.3d 654, 660 (D.C. Cir. 1999); *Gary v. Long*, 59 F.3d 1391, 1396–97 (D.C. Cir. 1995). That Title VII line does not "import" a new element into the Privacy Act; it supplies a well-accepted analogue for how courts distinguish entity fault from a non-managerial employee's unauthorized conduct where the statute rejects strict liability and demands a culpable state of mind attributable to the entity.

Because Plaintiff clings to an interpretation that attributes the actions of any employee to the whole agency, Plaintiff's response largely handwaves away that analytic point by asserting that Defendant's cited authorities "do nothing" because they are "not the Privacy Act." Pl.'s Opp'n to Def.'s Mot. to Dismiss (ECF No. 9) at 11. On the pleaded facts, the need for a limiting attribution principle is concrete: the Complaint alleges that Staff Sergeant Thomas E. Dines provided Winters's personnel materials to civilian Michael Chambers, who then provided them to Morgan Pasewicz for use in a domestic-violence proceeding and related personal attacks. Compl. (ECF No. 2) ¶¶ 29–33, 52–53. The Complaint does not allege any managerial approval, records-custodian authorization, or prior notice to Army management that would make a non-supervisory soldier's alleged misconduct plausibly attributable to "intentional or willful" agency action, and it instead alleges that the Army convened an Army Regulation 15-6 investigation only after Winters complained and then disciplined Dines. Compl. (ECF No. 2) ¶¶ 43–46.

**D.    Plaintiff's "patently egregious" framing targets the alleged bad act, not the required agency culpability**

Plaintiff's opposition tries to satisfy § 552a(g)(4) by concentrating almost exclusively on the alleged wrongfulness of Staff Sergeant Dines's purported conduct, arguing that because the

alleged disclosure was "patently egregious," the willfulness element is met. Pl.'s Opp'n (ECF No. 9) at 9–12. But § 552a(g)(4) requires "intentional or willful" conduct by the agency in failing to comply with the Act, not merely allegations that an individual acted badly after gaining access to information. *Albright*, 732 F.2d at 189; *White*, 840 F.2d at 87. From Plaintiff's pleading, the alleged disclosure chain is a soldier's alleged dissemination of portions of Plaintiff's Official Military Personnel File to private third parties for a personal domestic dispute, not an official Department communication "for" a Department purpose. Compl. (ECF No. 2) ¶¶ 29–33. And Plaintiff alleges that once he complained, the Army Inspector General process triggered an Army Regulation 15-6 investigation that substantiated the complaint and resulted in discipline— allegations that, if anything, point away from an inference of "flagrant disregard" or reckless agency noncompliance with the Act. Compl. (ECF No. 2) ¶¶ 43–46; *Maydak v. United States*, 630 F.3d 166, 179–80 (2010) (noting that an agency's willingness to take post-disclosure remedial action—in that case destroying the offending videotape—a relevant fact bearing on the agency's intentional disregard of the Act).

In framing the case this way, Plaintiff appears to be endorsing an interpretation of the Privacy Act that is so expansive as to encompass any employee engaged in any improper Privacy Act related conduct, no matter how carefully the agency develops policies to safeguard said data, no matter how well the agency trains its employees, and no matter how improperly the employee acts in mishandling the records. This is precisely the "strict liability" theory of the Privacy Act rejected by *Albright*. 732 F.2d at 189.

### E.      Plaintiff's "proper channels" inference is implausible and contradicts the Complaint's "unlawful dissemination" framing

Plaintiff's opposition also tries to recast the pleadings as alleging an agency-authorized disclosure based on a third party's state-court testimony that Dines purportedly went "through the

proper channels" and "submitted a request"—from which Plaintiff asks the Court to infer that some unidentified Army official must have approved a release. Compl. (ECF No. 2) ¶ 33. Yet, this stands in stark contrast with the Complaint's clear framing, namely that there was a report of an "unlawful dissemination" to the Army Inspector General, the Army convened an administrative investigation that substantiated the allegations, and "Staff Sergeant Dines was subsequently disciplined." Compl. (ECF No. 2) ¶¶ 42–45. Those allegations undercut the plausibility of Plaintiff's inference that the Army affirmatively approved and carried out an authorized release.

At the Rule 12(b)(6) stage, the Court accepts as true that the testimony occurred and that the quoted words were said, but *Twombly* and *Iqbal* do not require crediting Plaintiff's speculative leap from vague, conclusory labels to the ultimate conclusion that the Army actually approved and made an official disclosure. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (courts disregard "threadbare" and conclusory allegations and require factual content that makes liability plausible); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (complaint must plead enough facts to "nudge" the claim across the line from possible to plausible); *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (court need not "accept legal conclusions cast in the form of factual allegations" and "need not accept … inferences" unsupported by facts).

### F.      Plaintiff's reliance on *Laningham* and *Lombrano* is misplaced

Plaintiff invokes *Laningham* and *Lombrano* to argue that, because an agency can act only through its employees, courts assessing "intentional or willful" conduct under § 552a(g)(4) necessarily examine what the particular employee did and why. Pl.'s Opp'n (ECF No. 9) at 14–16; 5 U.S.C. § 552a(g)(4). However, Plaintiff confuses both the law and the argument. It is not "the lofty, detached policy directives of the agency as a whole" alone that matter. Pl.'s Opp'n (ECF No. 9) at 15. Nor is it necessary that a disclosure even be authorized—an unauthorized but job-related act can still be within the scope of employment.

- 10 -

But *Convertino* is clear: "In order for an agency to be liable for a Privacy Act violation allegedly committed by one of its employees, the responsible agency employee must have been acting within the scope of his or her employment." *Convertino*, 769 F. Supp. 2d at 147. *Convertino* did not precisely draw the contours of this. Nevertheless, various courts have favorably cited the Restatement (Second) of Agency § 228 as persuasive authority when considering scope of employment. *See, e.g., Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1014–15 (9th Cir. 2012) (because the Copyright Act doesn't define "scope of employment," it must be understood in light of the "general common law of agency" and referencing § 228 of the Restatement as a source of that common-law principle); *TD Bank N.A. v. Hill*, 928 F.3d 259, 276–77 (3d Cir. 2019) (same). The Restatement states that "[c]onduct of [an employee] is within the scope of employment, if, but only if, (a) it is the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the [employer.]" On this test, there can be little dispute that Plaintiff's theory in this case—an alleged one-off transmission to private persons for private ends—is well beyond the kind of action within Dines's scope of employment. Compl. (ECF No. 2) ¶¶ 33–35, 43–46.

By contrast, the disclosure in *Laningham* was an official, litigation-driven release and the disclosure in *Lombrano* was pleaded official release of medical information from a treating physician (and Colonel) to the plaintiff's employer. *Laningham v. Navy*, 813 F.2d 1236, 1238–39 (D.C. Cir. 1987); *Lombrano v. Dep't of the Air Force.*, No. 21-cv-872 (DLF), 2022 U.S. Dist. LEXIS 23403 (D.D.C. Feb. 9, 2022). Indeed, the D.C. Circuit specifically invokes the language of scope of employment in noting that the Department of Justice attorney in *Laningham*—as its counsel for the Navy in this case—"makes the Navy liable for the acts of its agents" under "respondeat superior" principles. *Laningham*, 813 F.2d at 1241 n.5.

Neither comes close to the circumstances present here: A single, unauthorized disclosure by a junior soldier with no supervisory status that was subsequently repudiated by the agency with disciplinary action.

**III.** **Plaintiff Still Fails to Plead a "System of Records" Disclosure Because He Does Not Plausibly Allege Retrieval by Identifier**

**A.** **Plaintiff's sworn testimony is that the image came from a Public Affairs photo repository, not his Official Military Personnel File**

Plaintiff's Opposition concedes that his only concrete "source" allegation in the incorporated materials—the hearing transcript statement that the photograph was "pulled … from a PAO [Public Affairs Office] server," but he asks the Court to allow discovery to determine whether the photo was instead in his Official Military Personnel File, or was duplicated between the two repositories. Pl.'s Opp'n (ECF No. 9) at 18 n.2; Compl. (ECF No. 2) Ex. 1 at 78. Plaintiff further posits (again, without any pleaded facts) that even if the image "originated in a PAO server," it "could still have been accessed from" his Military Personnel File either because it was later added to his Military Personnel File or because it originated in his Military Personnel File and was later duplicated onto a Public Affairs Office server. Pl.'s Opp'n (ECF No. 9) at 18 n.2. First, this duplication theory appears nowhere in the pleadings. Second, Plaintiff does not acknowledge that his source for the record is his own sworn testimony in court—captured in the very transcript he himself provided as an exhibit to his pleading—that the photograph was pulled from the public affairs office server. Compl. (ECF No. 2) Ex. 1 at 78. In that testimony, he says absolutely nothing about a Military Personnel File.

One court has squarely addressed what must be pleaded to permit a Privacy Act claim to survive a motion to dismiss, even if a document could "conceivably" have been retrieved from a system of records. *Mullane v. Dep't of Just.*, Civil Action No. 22-725 (RBW), 2024 U.S. Dist. LEXIS 120713, at *18 (D.D.C. July 10, 2024). There, the Court held that the complaint must

"contain sufficient factual information for the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* For example, to state a claim for relief that is plausible on its face it must be "[clear] from the face of the Complaint whether [the records] were retrieved by a personal identifier and from a system of records." *Id.* (citing *Maydak*, 630 F.3d at 178) (cleaned up). If it is "unclear how [particular records] were transmitted . . . the Court notes that it need not accept inferences drawn by the plaintiff if those inferences are not supported by the facts set out in the complaint." *Id.* (citing *Hettinga*, 677 F.3d at 476) (cleaned up).

In *York v. McHugh*, the court rejected a Privacy Act disclosure claim premised on the mere placement of sensitive information on a broadly accessible Army network repository. 850 F. Supp. 2d 305 (D.D.C. 2012). Even though the plaintiff's memorandum sat on a shared drive and could be surfaced through ordinary searching (including searches that would turn up files bearing a person's name), the court held the drive was not a "system of records" because there was no evidence the agency, in practice, retrieved records from that repository by name or other personal identifier—and the mere capability of identifier-based retrieval (or incidental ad hoc searching) is not enough to satisfy § 552a(a)(5). *Id*. at 311–15. That logic tracks Plaintiff's own pleaded facts here, which do not identify any identifier-keyed query of a designated personnel system; indeed, the incorporated hearing testimony points away from a Military Personnel File retrieval mechanism and toward a unit repository (a "PAO server") as the source of the photograph. Compl. (ECF No. 2) ¶¶ 29–33; Compl. (ECF No. 2) Ex. 1 at 78. Under *York*, a generalized server used as a shared repository—even if searchable in ways that might incidentally surface an individual's name—does not become a Privacy Act "system of records" absent factual allegations (and ultimately proof) that the Army actually retrieves records from that repository by personal identifier as a matter of practice. 850 F. Supp. 2d at 311–15.

- 13 -

Finally, as a matter of common sense, the image presented by Plaintiff is merely a photograph. Plaintiff supplies nothing in the pleadings to lead one to the conclusion that this is a photograph from Plaintiff's Military Personnel File. Plaintiff does not supply the characteristics, style, or noteworthy indicators of such a photograph that leads to this conclusion. Unless Plaintiff's position is that every photograph of Plaintiff in uniform is stored in his Military Personnel File, Plaintiff fails to meet this very low pleading threshold. After all, a complaint that pleads facts "merely consistent with" liability "stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (cleaned up).

Whatever else may be true about where the same photo might also have been stored, the only pleaded "source" attribution that is tied to a specific document in the pleadings is not an allegation of identifier-based retrieval from a system of records. Def.'s Mot. to Dismiss (ECF No. 8) at 13–14; Compl. (ECF No. 2) Ex. 1 at 78. Plaintiff's attempt to recast that attribution as "speculation" only underscores that the Complaint lacks nonconclusory facts establishing the required § 552a(a)(5) linkage between the alleged disclosure and an actual identifier-retrieved personnel system. Pl.'s Opp'n (ECF No. 9) at 18 n.2.

### B.       Plaintiff's claim that "other records" were disclosed is even more speculative

Failing to persuade that this photo was obtained from a system of records, Plaintiff argues the Complaint is not limited to an "innocuous photograph," but instead alleges that "other records" from his Military Personnel File were disclosed as well. Pl.'s Opp'n (ECF No. 9) at 17–18. Plaintiff points to the Complaint's broad phrasing that Ms. Pasewicz possessed "documents, including an official photo," purportedly "maintained" in the Military Personnel File, and he also cites the Complaint's additional allegations referencing "evidence" or "other records" from the Military Personnel File. Compl. (ECF No. 2) ¶¶ 24, 37, 52. Plaintiff claimed in his hearing testimony that Ms. Pasewicz "told [him] that she has various other military records, but refused to disclose what

they were." Compl. (ECF No. 2) Ex. 1 at 78. However, the claim that these "other records"—whatever they might be—were disclosed in violation of the Privacy Act is, on its face, pure speculation. Even if Ms. Pasewicz has any Plaintiff's military records, there is no evidence of what these "other records" are, how they came to be in her possession, or what system they were retrieved from. For that independent reason, Plaintiff's claims regarding other documents does not defeat dismissal of the § 552a(b) disclosure theory.

*   *   *

- 15 -

**CONCLUSION**

For these reasons, Defendant respectfully requests that the Court dismiss this action.

Dated:  January 22, 2026                    Respectfully submitted,

                                            JEANINE FERRIS PIRRO
                                            United States Attorney


                                            By:  _____/s/ Brian Tracy_____
                                                BRIAN TRACY
                                                Assistant United States Attorney
                                                601 D Street, NW
                                                Washington, DC 20530
                                                (202) 740-3359

                                            *Attorneys for the United States of America*

- 16 -