**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GARY W. WINTERS,<br>*Plaintiff*,<br>v.<br>DEPARTMENT OF THE ARMY,<br>*Defendant*. | Civil Action No. 25 - 1314 (LLA) |

# MEMORANDUM OPINION AND ORDER

Plaintiff Gary W. Winters sues the U.S. Department of the Army, alleging that the Army violated the Privacy Act, 5 U.S.C. § 552a, by disclosing his personnel records. ECF No. 2. The Army has moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 8. For the following reasons, the court grants the motion as it concerns Mr. Winters's request for injunctive relief but denies the remainder of the motion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In resolving the Army's motion to dismiss, the court accepts the following factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mr. Winters served in the Army for nearly a decade before he was honorably discharged in 2020. ECF No. 2 ¶¶ 15-16. In November 2023, Mr. Winters began dating Morgan Pasewicz. *Id.* ¶¶ 17, 19. The pair ended their "tumultuous relationship" in February 2024. *Id.* ¶ 20. In May, they both filed for domestic violence protective orders against each other in state court in North Carolina. *Id.* ¶ 21. That court held a hearing on the cross-complaints the following month. *Id.* ¶¶ 22, 24, 29; *see* ECF No. 2, Ex. 1 (June 24, 2024 Hr'g Tr. ("Tr.")).

At the hearing, Ms. Pasewicz testified, as relevant here, about "accessing" Mr. Winters's "military records," ECF No. 2, Ex. 1, at 15 (Tr. 60:1-10), including a headshot of Mr. Winters in his military uniform, *id.* at 7 (Tr. 28:9-14); *see* ECF No. 2, Ex. 2 (photograph). Ms. Pasewicz described the photo as an "unclassified record," ECF No. 2, Ex. 1, at 7 (Tr. 28:4), that her new boyfriend, Michael Chambers, had requested from a friend in the Army, Sergeant Thomas Dines, "who is a Special Forces active duty man," *id.* at 15 (Tr. 60:7-9); *see id.* at 8 (Tr. 29:19-20). Mr. Chambers and Sergeant Dines wanted to access Mr. Winters's files to verify whether Mr. Winters had been in the Army Special Forces, "because they suspected that he was not." *Id.* at 7 (Tr. 28:4-8). According to Ms. Pasewicz, Sergeant Dines "went through the proper channels to get the records." *Id.* at 8 (Tr. 29:19-21). In March 2024, Ms. Pasewicz texted the photograph to Mr. Winters, *id.* at 7-8 (Tr. 27:15-28:8), alongside messages accusing him of "stolen valor," *id.* at 8 (Tr. 29:3), and calling him a "fucking coward and a liar," *id.* (Tr. 32:3-5). Ms. Pasewicz testified that she "decided to call [Mr. Winters] out" for "not being Special Forces" because she "thought" it "would embarrass him enough to stop contacting" her. *Id.* at 16 (Tr. 61:11-13).

At the same hearing, Mr. Winters testified that he had spent his last seven years in the Army in the "first Special Forces Group, active duty." *Id.* at 17 (Tr. 66:4-5). He stated that he never misrepresented his military service to Ms. Pasewicz and that the two did not "really speak about the military." *Id.* (Tr. 67:14-15). When asked about the photograph, Mr. Winters testified that "[s]omeone intentionally and illegally took a picture of[f] a . . . federal government system that was not done through proper channels. . . . That person intentionally and willingly . . . violated the Uniform Code of Military Justice to pull that from a [Public Affairs Office] server." *Id.* at 20 (Tr. 78:11-17). He continued, "[Ms. Pasewicz] also told me that she has various other military records[] but refused to disclose what they were." *Id.* (Tr. 78:17-19).

At the conclusion of the hearing, the state court judge entered the requested protective orders as to both Mr. Winters and Ms. Pasewicz. *Id.* at 31 (Tr. 121:7-122:8). Mr. Winters thereafter lodged a complaint with the Army Inspector General about Sergeant Dines's "unlawful dissemination" of his personnel records. ECF No. 2 ¶ 43. The Army investigated the matter, found that Mr. Winters's allegations were "substantiated," and "subsequently disciplined" Sergeant Dines. *Id.* ¶¶ 44-45.

In April 2025, Mr. Winters filed this suit, alleging that the Army had violated the Privacy Act when Sergeant Dines disclosed his personnel records to Mr. Chambers. *Id.* ¶¶ 48-49, 52-53, 58-60. In December, the Army moved to dismiss under Rules 12(b)(1) and 12(b)(6). ECF No. 8. The motion is fully briefed. ECF Nos. 8, 9, 11.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction," and it is generally presumed that "a cause lies outside [of] this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under Federal Rule of Civil Procedure 12(b)(1), the court must dismiss an action unless the plaintiff can establish, by a preponderance of the evidence, that the court possesses subject-matter jurisdiction. *Green v. Stuyvesant*, 505 F. Supp. 2d 176, 177-78 (D.D.C. 2007). In reviewing a Rule 12(b)(1) motion, the court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). The court "is not limited to the allegations set forth in the complaint" and "'may consider materials outside the pleadings.'" *Morrow v. United States*, 723 F. Supp. 2d

71, 76 (D.D.C. 2010) (quoting *Jerome Stevens Pharms. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)).

### B. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion under Rule 12(b)(6), a court accepts all well-pleaded factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

## III. DISCUSSION

The Privacy Act prohibits an agency from improperly disclosing "any record which is contained in a system of records." 5 U.S.C. § 552a(b). "The civil remedies provision of the

Privacy Act provides that, for any 'intentional or willful' refusal or failure to comply with the Act, the United States shall be liable for 'actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000.'" *Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 291 (2012) (quoting 5 U.S.C. § 552a(g)(4)(A)); *see* 5 U.S.C. § 552a(g)(1)(D). The Army argues that Mr. Winters's claim must be dismissed because Mr. Winters has not shown that the alleged disclosure: (1) was of a record "contained in a system of records," 5 U.S.C. § 552a(b); (2) was "intentional or willful," *id.* § 552a(g)(4); or (3) resulted in "actual damages," *id.* § 552a(g)(4)(A). ECF No. 8, at 9-17.[1] The court considers each argument in turn.

**A. "System of Records"**

The Privacy Act defines "the term 'system of records' [as] a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5). "A system of records exists only if the information contained within the body of material is both *retrievable* by personal identifier and actually *retrieved* by personal identifier." *Paige v. Drug Enf't Admin.*, 665 F.3d 1355, 1359 (D.C. Cir. 2012) (quoting *Maydak v. United States*, 630 F.3d 166, 178 (D.C. Cir. 2010)).

---

[1] The Army further argues that Mr. Winters cannot seek injunctive relief in the form of expungement of his records because he proceeds under Subsection 552a(g)(1)(D) and, in any event, has not exhausted his administrative remedies under Subsection 552a(d). ECF No. 8, at 7-8. Mr. Winters "concedes that [the Army] is correct in this regard." ECF No. 9, at 9 n.1. The court accepts the concession. "To the extent that [a plaintiff] seeks an injunction compelling [an agency] to amend or expunge protected information, [his] failure to exhaust administrative remedies bars those claims." *Jacobs v. Nat'l Sec. Agency*, No. 19-CV-3439, 2019 WL 7168626, at *2 (D.D.C. Dec. 24, 2019) (citing *Haase v. Sessions*, 893 F.2d 370, 375 (D.C. Cir. 1990)). Accordingly, the court will dismiss Mr. Winters's request for injunctive relief.

In his complaint, Mr. Winters alleges that his personnel records were accessed from his "Official Military Personnel File," which is maintained by the Army in a system of records. ECF No. 2 ¶¶ 24, 48, 52. The Army raises two arguments that Mr. Winters has not established that his personnel records were pulled from a "system of records" under Section 552a(b), warranting dismissal under Rule 12(b)(6). ECF No. 8, at 13. Neither persuades the court.

First, the Army contends that Mr. Winters's allegation that the records came from his Official Military Personnel File contradicts his testimony from the North Carolina court hearing, where Mr. Winters stated that the photograph came from an Army Public Affairs Office server. ECF No. 8, at 2-3 (citing ECF No. 2, Ex. 1, at 20 (Tr. 78:17)). In the Army's view, this inconsistency is fatal because "a Public Affairs photo [is] stored on a unit repository rather than an identifier-retrieved personnel record." *Id.* at 13. But the court must credit the allegations in Mr. Winters's complaint, in which Mr. Winters contends that the photograph was pulled from his "Official Military Personnel File," ECF No. 2 ¶ 24—which the Army does not deny is a "system of records" under the Privacy Act, *see generally* ECF No. 8. As Mr. Winters explains, the photograph could have come from either his Official Military Personnel File or an Army Public Affairs Office server, ECF No. 9, at 18 n.2, and, at the pleading stage, "Mr. Winters can 'hardly be expected to know the full details behind [the] improper disclosure,'" *id.* at 18 (quoting *Feldman v. Cent. Intel. Agency*, 797 F. Supp. 2d 29, 41 (D.D.C. 2011)); *see Kelley v. Fed. Bureau of Investigation*, 67 F. Supp. 3d 240, 265 (D.D.C. 2014) (rejecting the defendant's argument in a motion to dismiss "that the disclosed information could have come from sources other than a system of records," and explaining that "[w]hile plaintiffs will need to amass sufficient evidence to meet their burden of proof as the case proceeds, they need not do so at the pleading stage"). Accordingly, by plausibly alleging that the photograph was accessed from his Official Military

Personnel File, Mr. Winters has sufficiently alleged that records were accessed from a "system of records" under the Privacy Act.

Additionally, even if the photograph was not accessed from Mr. Winters's Official Military Personnel File, Mr. Winters plausibly alleges that Sergeant Dines accessed *other* records from his Official Military Personnel File. ECF No. 2 ¶¶ 24, 29, 33, 37. In her testimony, Ms. Pasewicz referred to "records" (plural) when explaining what Sergeant Dines had requested. ECF No. 2, Ex. 1, at 8 (Tr. 29:21), 15 (Tr. 60:8, 10). Throughout his complaint, Mr. Winters links these records to his Official Military Personnel File. ECF No. 2 ¶¶ 24, 29, 37, 42-44, 49, 52-54, 56-57, 60. Mr. Winters further alleges that the Army Inspector General "investigat[ed]" and "substantiated" his claims of improper access of his Official Military Personnel File. *Id.* ¶¶ 44-45. Given the Army's failure to contest that Mr. Winters's Official Military Personnel File is contained in a "system of records," Mr. Winters's allegations about the non-photograph records also withstand the Army's motion to dismiss.

Second, the Army argues that Mr. Winters does not "plausibly allege that the disclosure resulted from an actual identifier-based retrieval," meaning that he "pleads no facts that anyone queried [his] name or personal identifiers in a [personnel] system of records." ECF No. 8, at 13 (internal quotation marks omitted). But Mr. Winters alleges that the disclosed personnel records were "contained in a system of records," ECF No. 2 ¶ 48, and "one can infer that [personnel] records would include identifying information" and "be 'retrieved by the name of the individual' or by some other identifier," *Lombrano v. Dep't of the Air Force*, No. 21-CV-872, 2022 WL 392308, at *3 n.1 (D.D.C. Feb. 9, 2022) (quoting 5 U.S.C. § 552a(a)(5)); *see Krieger v. U.S. Dep't of Just.*, 529 F. Supp. 2d 29, 42 (D.D.C. 2008) (observing that the plaintiff's official personnel file was "a record maintained within a system of records"). Again, "[w]hile [Mr. Winters] will need

to amass sufficient evidence to meet [his] burden of proof as the case proceeds," he has met his minimal burden at the pleading stage. *Kelley*, 67 F. Supp. 3d at 265.

### B. "Intentional or Willful"

Not "every affirmative or negligent action that might be said technically to violate the Privacy Act's provisions" is redressable under Subsection 552a(g)(4). *Maydak*, 630 F.3d at 180. Instead, the agency's violation must have been "intentional or willful." 5 U.S.C. § 552a(g)(4). Accordingly, a plaintiff must generally show that the agency's violation was: (1) "so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful," (2) "somewhat greater than gross negligence," (3) "committed without grounds for believing [it] to be lawful, or" (4) "in flagrant disregard of others' rights under the Act." *Maydak*, 630 F.3d at 180.

The Army argues that Mr. Winters cannot satisfy the "intentional or willful" standard because Sergeant Dines was acting "in direct contravention of Army policy" and "purely personal, unauthorized conduct by an employee" cannot be attributed to the agency. ECF No. 8, at 9.[2] In the Army's view, "to be liable for a Privacy Act violation allegedly committed by one of its employees, the responsible [Army] employee must have been acting within the scope of his or her employment." ECF No. 11, at 11 (quoting *Convertino v. U.S. Dep't of Just.*, 769 F. Supp. 2d 139, 147 (D.D.C. 2011), *rev'd on other grounds*, 684 F.3d 93 (D.C. Cir. 2012)). Mr. Winters responds

---

[2] The Army frames this as an argument under Rule 12(b)(1), arguing that by failing to "establish an intentional or willful agency disclosure," ECF No. 8, at 12, Mr. Winters cannot show that his claim falls within the Privacy Act's waiver of sovereign immunity, *id.* at 4. Whether the court considers the Army's argument under Rule 12(b)(1) or Rule 12(b)(6), the court reaches the same result.

that unlawful disclosures by "rogue [agency] employees" are not immune from liability under the Privacy Act. ECF No. 9, at 12. Mr. Winters has the better argument.

To begin, courts in this Circuit have allowed complaints to proceed to discovery when the action that allegedly violated the Privacy Act was part of a personal vendetta rather than an official agency policy. For example, in *Feldman*, the court found sufficient intentionality or willfulness to withstand a motion to dismiss where the plaintiff alleged that his "rivals . . . persecuted him by ginning up a misconduct investigation against him and then leaking details of that investigation in violation of the Privacy Act." 797 F. Supp. 2d at 42. In *Tolbert-Smith v. Chu*, 714 F. Supp. 2d 37 (D.D.C. 2010), the court reached the same conclusion based on the plaintiff's allegation that agency personnel "placed records referring and relating to her disability on a [public] server . . . to retaliate against her for filing an administrative complaint." *Id.* at 43. And in *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576 (D.C. Cir. 2002), the D.C. Circuit concluded that the plaintiff's allegation that agency staff "fabricated and falsified" information satisfied the Privacy Act's requirement of intentional or willful conduct at the motion-to-dismiss stage. *Id.* at 584. If the Army were correct that the Privacy Act contained a strict scope-of-employment rule, these cases undoubtedly would have come out differently, as the agencies at issue would have disavowed the conduct of their rogue employees.

Against these cases, the Army cites *Convertino*, in which the court granted the defendants' motion for summary judgment because the plaintiff, despite his "monumental effort," could not identify the agency employee responsible for the disclosure. 769 F. Supp. 2d at 144; *see id.* at 145-46. The plaintiff alleged that "an unknown person or persons at [the U.S. Department of Justice ("DOJ") had] disclosed details from his [Office of Professional Responsibility] referral to [a reporter]" in violation of the Privacy Act. *Id.* at 141-42. While this allegation was sufficient to

withstand a motion to dismiss, *id.* at 142, the court determined that, at summary judgment, the plaintiff needed to "know the leaker's identity" because, without it, "no reasonable fact-finder could find that DOJ acted willfully or intentionally with regard to any leak in th[e] case," *id.* at 146. The court went on to explain that "[p]art of the reason [the plaintiff] has to know the leaker's identity . . . is that without it, he cannot show that the DOJ employee who allegedly leaked information . . . was acting within the scope of his or her DOJ employment at the time of the leak." *Id.* at 147. The Army reads this sentence as immunizing agencies from the actions of rogue employees, ECF No. 11, at 6, but it could just as well be read to mean that the plaintiff needed to show that the leaker was a DOJ employee *at the time of the leak*, as opposed to a former employee whose conduct could not be attributed to the agency.[3] In any event, the summary judgment posture of *Convertino* is alone sufficient to distinguish it from this case.

### C. "Actual Damages"

To "recover a guaranteed minimum award of $1,000 for violations of the [Privacy] Act," a plaintiff must "prove at least some 'actual damages.'" *Cooper*, 566 U.S. at 295 (quoting *Doe v. Chao*, 540 U.S. 614, 627 (2004)). A "plaintiff seeking monetary damages for an agency's improper disclosure must establish not only that he was 'adversely affected' by the improper disclosure, but also that he suffered 'some harm for which damages can reasonably be assessed.'"

---

[3] The latter understanding is consistent with the remainder of the court's opinion, in which the court rejected the plaintiff's claim that a particular DOJ employee was the leaker based on evidence that the employee "had access to the information at issue" and "did not like" the plaintiff. *Convertino*, 769 F. Supp. 2d at 149; *see id.* at 148 (explaining that the plaintiff "must show that [the suspect] *actually did* leak the information"; otherwise, the plaintiff could "circumvent[] the Act's" intentional or willful requirement "simply by proving a blackened heart and an opportunity to violate the Act"). This analysis would not have been necessary if a disclosure motivated by personal animus placed an employee's actions beyond the scope of his employment.

*Mulhern v. Gates*, 525 F. Supp. 2d 174, 181-82 (D.D.C. 2007) (quoting *Chao*, 540 U.S. at 621). The Privacy Act does not authorize recovery for "nonpecuniary mental and emotional harm," *Cooper*, 566 U.S. at 302, but instead is "limited to proven pecuniary or economic harm," *id.* at 299.

Mr. Winters alleges that as a result of Sergeant Dines's disclosure to Ms. Pasewicz, he has suffered "profound and severe anxiety" that has "required [him] to seek further mental health care and counseling, costing him thousands of dollars to this point and necessitating further care for a[] yet unknown but certainly substantial period of time." ECF No. 2 ¶¶ 54-55. The Army argues that Mr. Winters has not sufficiently alleged actual damages because his "only asserted 'adverse effect' . . . is that he allegedly 'spent thousands of dollars' on mental-health treatment," which, according to the Army, was not "proximately caused by the alleged [disclosure]." ECF No. 8, at 14-15 (citation omitted).[4] Again, the Army demands too much at the pleading stage. Mr. Winters plausibly traces the alleged disclosure to an adverse effect: Ms. Pasewicz's use of the disclosed records to, in her words, "embarrass" him, ECF No. 2, Ex. 1, at 16 (Tr. 61:13), which "caused [him] profound and severe anxiety," ECF No. 2 ¶ 54. Mr. Winters then plausibly ties that adverse effect to a pecuniary loss: "thousands of dollars" spent on "further mental health care and counseling." ECF No. 2 ¶ 55; *see Hill v. U.S. Dep't of Def.*, 70 F. Supp. 3d 17, 21 (D.D.C. 2014) ("Direct out-of-pocket expenses, such as payment for medical services, are the very definition of pecuniary losses."). That is sufficient at this point in the proceedings. *See Hill*, 70 F. Supp. 3d

[4] The Army raises this argument under both Rules 12(b)(1) and 12(b)(6). ECF No. 8, at 17 ("Where, as here, the complaint pleads no facts . . . to verify that any alleged expenditure for mental health treatment was caused by the alleged Privacy Act violation rather than [Mr. Winters and Ms. Pasewicz's relationship troubles] . . . , the plaintiff has not carried his jurisdictional burden under the sovereign's strictly construed waiver nor plausibly pled the elements of a [S]ection 552a(g)(1)(D) claim."). The court reaches the same result under either rule. *See supra* n.2.

at 22; *Lombrano*, 2022 WL 392308, at *6 ("To state a claim for relief under the Privacy Act, it is enough to plausibly [plead] 'some pecuniary harm, no matter how slight.'" (quoting *Cooper*, 566 U.S. at 296)).

The Army also contends that Mr. Winters's "pre-existing mental health issues" and other "extreme stressors" destroy the "requisite causation" by way of Ms. Pasewicz's "intervening, private-party conduct." ECF No. 8, at 15-16; *see, e.g.*, ECF No. 2 ¶ 41 (alleging that Mr. Winters had discussed his mental health, among other things, with Ms. Pasewicz during their relationship); ECF No. 2 ¶ 20 ("Mr. Winters and Ms. Pasewicz . . . had a tumultuous relationship."); ECF No. 2 Ex. 1, at 17-18 (Tr. 67:16-70:6) (similar). But "[a] complaint survives a motion to dismiss even '[i]f there are two alternative explanations, one advanced by [the] defendant and the other advanced by [the] plaintiff, both of which are plausible.'" *VoteVets Action Fund v. U.S. Dep't of Veterans Affs.*, 992 F.3d 1097, 1104 (D.C. Cir. 2021) (alterations in original) (quoting *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015)). The court's "role is not to speculate about which [one is] likely to be proved after discovery." *Id.* at 1106 (quoting *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015)).

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant's Motion to Dismiss, ECF No. 8, is **GRANTED** to the extent that Plaintiff's request for injunctive relief, ECF No. 2, at 8, is **DISMISSED** with prejudice, but the motion is otherwise **DENIED**. Defendant shall file

an answer to Plaintiff's Complaint, ECF No. 2, on or before October 8, 2026, *see* Fed. R. Civ. P. 12(a)(4)(A).

**SO ORDERED.**

LOREN L. ALIKHAN
United States District Judge

Date: September 24, 2026